### NAPIER *v.* McLENDON, Secretary of State.

1. The provisions of section 2 of the act approved August 19, 1918 (Acts 1918, p. 154), which declares that " the returns of the election of every other officer, where the returns are required to be made to the Secretary of State, shall be sealed up in a separate package and transmitted to the Secretary of State," etc., are not applicable to the returns of the elections for Attorney-general of this State; as the returns of the election of this officer are, under the law, to be sent by mail to the Governor.

2. The court did not err in refusing a mandamus absolute requiring the Secretary of State to consolidate the returns of the election of Attorney-general and certify the result to the Governor.
                        No. 2435. MAY 13, 1921.

Petition for mandamus. Before Judge Ellis. Fulton superior court. January 19, 1921.

*J. H. Hall, C. W. Smith,* and *J. L. Mayson,* for plaintiff.

*R. A. Denny, attorney-general, Graham Wright,* and *Barry Wright,* for defendant.

BECK, P. J. George M. Napier brought suit in the superior court, by mandamus, against S. G. McLendon as Secretary of State, alleging that the plaintiff, in the general election in November, 1920, had been elected to the office of Attorney-géneral of the State of Georgia; that the returns had been made to the Secretary of State and were held by him; and that demand had been made upon him to certify the result of this election to the Governor, or else to deliver the physical returns themselves to the Governor, which had been refused by him. The prayers of the petition as amended were, that the mandamus be made absolute, and that the Secretary of State be required to consolidate the vote cast for the Attorney-general at the election and certify the result of the election to the Governor. The judge, after hearing evidence and argument, denied the prayers of the petition and refused the mandamus absolute, and the plaintiff excepted. The case presented by the record before us involves the construction of an act of the legislature approved August 19, 1918, which relates to returns of elections for State-house officers, and prescribes the manner in which those returns shall be made. This act is in the following language:

" An act to prescribe the manner in which the returns of elections for Secretary of State, Treasurer, Comptroller-general, and all other State-house officers, who are to be commissioned by the Governor, shall be made; and. for other purposes.

" Section 1. Be it enacted by the General Assembly of the State of Georgia, and it. is hereby enacted by authority of the same, that the returns for every election for Secretary of State, Treasurer, and Comptroller-general shall be sealed up by the managers separately from the other returns and directed to the President of the Senate and Speaker of the House of Representatives, in the same manner and at the same time that returns for the election of Governor are made, and shall be transmitted to the Secretary of State, who shall, without opening the same, cause the same to be laid before the Senate on the day after the two Houses shall be organized, and at the same time the returns for the election of Governor are laid before the Senate, and they shall be transmitted by the Senate to the House of Representatives.

" Sec. 2. Be it further enacted by the authority aforesaid, that

the returns of the election of every other officer, where the returns are required to be made to the Secretary of State, shall be sealed up in a separate package and transmitted to the Secretary of State, whose duty it shall be to open the returns, consolidate the vote and declare the result, and- certify to the Governor the names of the persons elected; and the Governor shall issue commissions to such officers as shall appear from the certificate of the Secretary of State to have been elected.

" Sec. 3. Be it further enacted by the authority aforesaid, that the terms of the officers last mentioned shall commence on the first day of January next after they are elected."

Section 4 relates merely to the furnishing of copies to the several ordinaries of the State. Section 5, the last section, repeals conflicting laws.

Thus it will be seen that section 1 of the act prescribes the manner of making returns of every election for Secretary of State, Treasurer, and Comptroller-general, and does not deal with returns of elections of the other State-house officers. Section 2 prescribes that the returns of elections of every other officer, where returns are required to be made to the Secretary of State, shall be in a separate package and transmitted to the Secretary of State, whose duty it shall be to open the returns, consolidate the vote and declare the result, and certify to the Governor the names of the persons elected. This second section includes the office of Attorney-general only in the event he is embraced in the expression, " every other officer, where the returns are required to be made to the Secretary of State." That is the definitive term by which we must be guided in determining whether the Attorney-general is affected by this act. The caption of the act is clearly broad enough to embrace the Attorney-general, because it prescribes the manner in which the returns of elections for certain specified officers " and all other State-house officers, who are to be commissioned by the Governor," shall be made; and we are of the opinion that the Attorney-general is a " State-house officer." But the provisions of this second section of the act are not as comprehensive as they might have been under the title of the act. The title of the act in cases of doubt may be looked to in construing the language of a legislative enactment. But the definitive part of section 2, which shows who are included among the officers the manner of the returns of whose elections is

here fixed, narrows the class to those officers the returns of whose elections are required to be made to the Secretary of State; and that necessarily requires a consideration of the question as to the manner of making returns of the election of the officer whose office is in question here. And this question can not be answered without considering the statute prescribing the manner in which the returns of elections for Attorney-general should be made, and which was of force and therefore necessarily in the legislative mind at the time of·passing the act of 1918. The statute controlling this immediate question is as follows:

"Chapter 4. Elections for Governor, Members of Congress, United States Senators, Electors for President and Vice-President, Treasurer, Comptroller-General, Attorney-General, and Commissioner of Agriculture.

"Article 1. § 94. Provisions applicable to all elections. The elections for the offices heading this Chapter are governed by the same rule as elections for members of the General Assembly, in the following particulars: 1. In oaths to be taken by the voters. 2. In the class of persons to hold the election and the oath to be taken by them. 3. In·the places and the time of the day to hold them. 4. In the manner of conducting and returning them, including all special elections, and in the duty of the clerks of the superior courts and the grand juries." Chapter 3, the Second Title of the Civil Code, relates to the election of members of the General Assembly, prescribes the manner of holding those elections, the qualifications of superintendents of elections for members of the legislature, oaths to be taken, etc.; and section 82, subsection 9, embraced in article 3 of the chapter last referred to, which relates specifically· to the consolidation of the vote and the returns of elections, declares that "They [the superintendents of the elections] shall make and subscribe two certificates, stating the whole number of votes each person received in the county; one of them, together with one list of voters and one tally-sheet from each place. of holding the election, shall be sealed up and, without delay, mailed to the Governor; the other, with like accompaniments, shall be directed to the clerk of the superior court of the county, and by him deposited in his office."

When we consider the provision in section 94, subsection 4, relating to the manner of making returns of elections for the officers

named at the head of this division of the Civil Code, among whom is the Attorney-general, which returns are to be made under the same rules as elections for members of the General Assembly, and compare that subsection of § 94 with subsection 9 of § 82, which prescribes the manner of holding elections for members of the General Assembly, and the returns of these elections, it becomes clear that the returns of the elections for Attorney-general of this State are to be made to the Governor, because they are to be made as the returns of elections for members of the General Assembly; and in the last section referred to — section 82, subsection 9 — it is explicitly declared that the superintendents of elections " shall make and subscribe two certificates  .  .  ; one of them, together with one list of voters and one tally-sheet from each place of holding the election, shall be sealed up and, without delay, mailed to the Governor." Inasmuch as we find express provision for the manner of making returns of an election for Attorney-general, that provision of the constitution embodied in section 6409 of the Civil Code, and in the following language: " Returns of election for all civil officers elected by the people, who are to be commissioned by the Governor, and also for the members of the General Assembly, shall be made to the Secretary of State, unless otherwise provided by law," is not applicable here.

The returns of the election for Attorney-general for the term of that office now in question were sent to the Secretary of State, when they should have been mailed to the Governor. And it necessarily follows that the Secretary of State was without authority to consolidate these returns and declare the result, and he properly refused to do so; and the judge of the superior court did not err in declining to grant the mandamus requiring the Secretary of State to perform this official act. That judgment was proper under the construction which we have given to the act of 1918, relating to the returns of elections of State-house officers and the law now upon our statute books prescribing rules for making returns of elections in cases like that we have before us.

*Judgment affirmed. All the Justices concur.*