## McGREGOR *v.* CLARK.

1. The Secretary of State, the Treasurer, the Comptroller-General, and the Attorney-General are " State-House Officers."
2. An exhaustive definition of the phrase " State-House Officers " is unnecessary. We hold, however, that the Commissioner of Pensions is not a " State-House Officer " as mentioned in the act of 1918 (Ga. Laws 1918, p. 154).
3. The act of 1918 (Ga. Laws 1918, p. 154), neither as it was originally approved, nor in connection with the amendatory act of 1921 (Ga. Laws 1921, p. 232), operated to repeal or modify by implication or otherwise the act of 1908 (Ga. Laws 1908, p. 66) with reference to the term of office of the Commissioner of Pensions and when the term begins.
4. Section 3 of the act of 1918 mentioned in the preceding headnote is void, because it is in conflict with art. 3, sec. 7, par. 8, of the State constitution (Civil Code (1910), § 6437), which provides: " No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." The said section offends this paragraph of the constitution in both respects mentioned.
5. The demurrer was not subject to the criticism that it was speaking, and that it was insufficient to raise the issues adjudicated by the trial court. The court did not err in sustaining the demurrer and in dismissing the petition.

No. 3584. MARCH 21, 1923.

Application for quo warranto. Before Judge Ellis. Fulton superior court. January 8, 1923.

*L. D. McGregor,* for plaintiff.

*R. B. Blackburn* and *Marion Smith,* for defendant.

GILBERT, J. On January 2d, 1923, C. E. McGregor applied for and was granted leave to file an information in the nature of quo warranto against John W. Clark. The petition for quo warranto alleges, that in the election held November 7, 1922, McGregor was duly elected to the office of Pension Commissioner; that this fact was duly certified by the Secretary of State to the Governor; that

the Governor refused to issue to relator the commission provided by law, but on the contrary issued a commission to John W. Clark, extending from December 31st, 1922, to the fourth Wednesday in June, 1923, Clark having been appointed by the Governor to fill the vacancy caused by the death of John W. Lindsey; that relator, on January 2, 1923, made demand upon Clark for the delivery to relator of the office of Commissioner of Pensions with the books and records appertaining thereto, which demand was refused by Clark; that Clark was usurping the office and holding the same illegally and in violation of law. The prayer was, that Clark be required to show cause why he should not be ousted from the office; and for process. The relator pleaded particularly, as reasons why he would be entitled to assume the office on January 1st, 1923, the terms of the act approved August 19, 1918, the act approved August 15, 1921, and section 1470 of the Penal Code of 1910.

Clark, the respondent, demurred upon the grounds: (1) said information does not show any ground for the issuance of the writ of quo warranto, or for the other relief prayed; (2) it does not appear from the facts stated that respondent's term of office has expired, or that relator's term of office has commenced; (3) it does not appear that the time fixed by the law for the termination of respondent's term of office has arrived; (4) it does not appear that the relator has qualified for the alleged office; (5) the act of 1918 referred to in the petition, construed in connection with the other statutes, does not mean that respondent's term of office expires January 1st; (6) if it should be held that respondent's office is embraced within the third section of said act, that section is unconstitutional and void for the reason that it is in conflict with art. 3, sec. 7, par. 8, of the State constitution (Civil Code (1910), § 6437), which provides that no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from that expressed in the title thereof; that said act is defective in both these respects, because the title makes reference only to " the manner in which the returns of elections for Secretary of State, Treasurer, Comptroller-General, and all other State-House Officers who are to be commissioned by the Governor shall be made, and for other purposes," whereas the third section of said act purports to contain a provision in regard to changes in

the term of office of certain officials, which said matter is not contained within the title of the act and is not germane thereto. The demurrer was sustained and the petition dismissed. Upon that judgment the relator assigns error.

From the foregoing statement of the pleadings it will be apparent that the sole issue is whether the term of office of the Commissioner of Pensions begins on the first day of January next after the election, as contended by the petitioner; or whether it begins in June next after the election, as contended by the respondent. Admittedly the term of office continues for two years. Before considering the precise questions made by the demurrer to the petition, it may be useful to trace the history of the legislation creating the office of Commissioner of Pensions in Georgia, and to recite the legislation and portions of the constitution bearing on the question involved. The office was originally created in the year 1896, and by the terms of the act was for a term of three years, and it was provided that the Commissioner "shall be appointed by the Governor." By the express terms of this act in section 5 it was provided that "this office shall continue for six years only, unless continued by further legislation." It was also provided that all records, books, etc., shall be kept open to inspection and under the charge and direction of the Governor, and all rulings made by said commissioner shall be subject to revision and change by the Governor. Ga. Laws 1896, p. 65. In the year 1901 section 5 of the act of 1896 was so amended as to provide: "This office shall continue for fifteen years only, unless continued by further legislation." Acts 1901, p. 58. In the year 1908 the General Assembly passed an act providing that the Commissioner of Pensions shall be elected by the electors of the whole State who are entitled to vote for members of the General Assembly. This act in section 3 further provided "that said election shall be held under the same rules and regulations as now apply to the election of Governor, State-House officers, and members of the General Assembly, and . . shall begin and end in the same way and at the same time with the Governor and all State-House officers so elected." The fifth section of said act further provides that "In case of a vacancy in said office, causing an unexpired term, the same shall be filled by executive appointment, and the person so appointed shall hold said office for the balance of the unexpired

term, and until his successor is elected and qualified." Penal Code (1910), § 1473, and see note. In the year 1910 the General Assembly made a further extension of the life of the office of Commissioner of Pensions. This act provided for the amendment of section 5 of the act of 1896, as amended by the act of 1901, so that section 5 of said act of 1896 should read as follows: " This office shall continue for ' twenty-five ' years only, unless continued by further legislation." Ga. Laws 1910, p. 124. Under the terms of this act the office of Pension Commissioner would have expired in the year 1921 but for further legislation. The General Assembly, however, in 1920, passed an act the caption of which is " An act to fix the term of the office of Commissioner of Pensions, and to continue it until otherwise provided by the General Assembly, and for other purposes." Section 1 provides " that on and after the passage of this bill the term of the office of Commissioner of Pensions shall continue to exist until otherwise provided by the General Assembly of the State." Section two repeals conflicting laws.

The Civil Code (1910), § 262, provides that the following officers must be commissioned with the great seal of State annexed thereto, signed by the Governor and countersigned by the Secretary of State, to wit: Attorney General, State Treasurer, Comptroller-General, etc. Section 263 provides that all other civil officers of the State or County, not mentioned in the preceding section, shall be commissioned under the seal of the Executive Department, signed by the Governor and countersigned by one of his secretaries, etc. The Commissioner of Pensions is a civil officer not included in section 262, and is included within the provisions of section 263.

Thus stood the law until August 19, 1918, and until the present time, unless the act of the General Assembly approved on that date, as amended, changed the law in regard to the time when the term of the Commissioner of Pensions began. That act (Ga. Laws 1918, p. 154) is in part as follows: " An act to prescribe the manner in which the returns of elections for Secretary of State, Treasurer, Comptroller-General, and all other State-House officers, who are to be commissioned by the Governor, shall be made, and for other purposes. . Section 1. Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted

by authority of the same, that the returns for every election for Secretary of State, Treasurer, and Comptroller-General shall be sealed up by the managers separately from the other returns, and directed to the President of the Senate and Speaker of the House of Representatives, in the same manner and at the same time that the returns for the election of Governor are made, and shall be transmitted to the Secretary of State, who shall, without opening the same, cause the same to be laid before the Senate on the day after the two Houses shall be organized, and at the same time the returns for the election of Governor are laid before the Senate, and they shall be transmitted by the Senate to the House of Representatives. Sec. 2. Be it further enacted by the authority aforesaid, that the returns of the election of every other officer, where the returns are required to be made to the Secretary of State, shall be sealed up in a separate package and transmitted to the Secretary of State, whose duty it shall be to open the returns, consolidate the vote and declare the result, and certify to the Governor the names of persons elected, and the Governor shall issue commissions to such officers as shall appear from the certificate of the Secretary of State to have been elected. Sec. 3. Be it further enacted by the authority aforesaid, That the terms of the officers last mentioned shall commence on the first day of January next after they are elected." The remaining sections are not material to this case.

On August 15, 1921, the following act was passed by the General Assembly: "An Act to amend an Act approved August 19, 1918, which act provides how the returns of elections for State Treasurer, Comptroller-General, and other State-House Officers shall be made. Section 1. Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same, that Section 2 of the above-recited act be amended by striking from [?] said section 2, and inserting in lieu thereof a section to be known as section 2 of said act, as follows: ' That the returns of the election of every civil officer who is to be commissioned by the Governor shall be sealed up in a separate package and transmitted to the Secretary of State, whose duty it shall be to open the returns, consolidate the vote and declare the result, and certify to the Governor the names of persons elected, and the Governor shall issue commissions to such officers as shall appear

from the certificate of the Secretary of State to have been elected." Section two repeals conflicting laws.  Ga. Laws 1921, p. 232. Prior to 1921 the returns of the election of the Commissioner of Pensions were required to be mailed to the Governor.  Civil Code, § 82, par. 9; Penal Code, § 1469.  By an act approved August 13, 1921 (Ga. Laws 1921, p. 91), the General Assembly passed an act the caption of which is as follows: " An act to amend section 82 of the Code of Georgia."  In the body of the act it provides for striking the word " Governor " where it occurs in said section and ninth paragraph thereof, and inserting in lieu of said word the words " Secretary of State," so that when amended the said section shall provide for the returns of election now required by said section to be made to the Governor to be made to the Secretary of State instead of the Governor."  In 1902 an act was passed requiring the General Assembly to meet on the fourth Wednesday in June and annually thereafter on the same day until changed by law. Ga. Laws 1902, p. 66; Civil Code (1910), § 331.  The term of the Governor begins as soon as he is inaugurated, which must be during the first week of the session of the General Assembly.  Civil Code (1910), § 139.  So that it will be observed that when the act of 1896, creating the office of Commissioner of Pensions, was passed, the term of office of the Governor of the State began during the week following the fourth Wednesday in June after his election.  The constitution of Georgia (Civil Code (1910), § 6489) provides that the Secretary of State, Comptroller-General, and Treasurer " shall hold their office for the same time as the Governor," and the constitution denominates these last named " Officers of the Executive Department."  Civil Code (1910), § 6470.  They are elected in the same manner as the Governor.  Civil Code (1910), §§ 205, 215, 235.  The Attorney-General is also a constitutional officer, and is included in the article having reference to the Judicial Department, and is elected for the same term and in the same manner as the Governor.  Civil Code (1910), §§ 6528, 253. Section 254, paragraph 4, makes it the duty of the Attorney-General " to act as the legal adviser of the Executive Department."

1.  The Secretary of State, the Treasurer, and the Comptroller-General are " State-House Officers," in contemplation of the law as found in the act of 1918.  They are so treated in the act.

They are all permanent constitutional officers. They are all elective officers, and all for a term of two years. Moreover these offices comprise all essential characteristics as that of Attorney-General, and the Attorney-General has been held to be a "State-House Officer." *Napier* v. *McLendon*, 151 *Ga.* 559, 561 (107 S. E. 542).

2. An exhaustive and satisfactory definition of the phrase "State-House Officer" would be most difficult to state, and under the pleadings in this case it is obviously unnecessary. We need only to inquire, on this phase, if the Commissioner of Pensions is such "State-House Officer" as those mentioned in the act of 1918. We hold that the Commissioner of Pensions is not such a "State-House Officer." The office of Pension Commissioner differs in several important particulars from such offices as Secretary of State, Treasurer, Comptroller-General and Attorney-General. The office of Commissioner of Pensions, when created, was not intended to be a permanent office. It was an appointive office the term of which was three years. As at first created it was to automatically terminate in six years. Subsequently the time for its termination was extended to fifteen years, and subsequently to that to twenty-five years; and in 1920 the act was passed which provided that "the term of the office of Commissioner of Pensions" shall continue until otherwise provided by law. The language of the last-named act is somewhat ambiguous, in that it undertakes to extend the "term" of the office of Pension Commissioner. The question is not specifically made by the pleadings as to whether this act simply made the tenure of office indefinite during good behavior until otherwise provided, or whether, notwithstanding the inadvertent use of the word "term," the intention of the legislature was really to continue, until otherwise provided by law, the "office" of Commissioner of Pensions. Without deciding that question we will assume that both parties treat this act as continuing the "office," and not the "term" of office. As shown above, the entire management of the office and all rulings made by the Commissioner of Pensions are subject to the revision of and change by the Governor. These material and important differences, we think, are sufficient to show that the office of Pension Commissioner cannot be considered as embraced in the term "State-House Officer."

3. The act of 1918 (Ga. Laws 1918, p. 154) when passed and approved did not have reference to any officer save those specifically named, and "all other State-House Officers who are to be commissioned by the Governor." Its caption is "An act to prescribe the manner in which the returns of elections for Secretary of State, Treasurer, Comptroller-General, and all other State-House Officers, who are to be commissioned by the Governor, shall be missioner of Pensions. The second section has reference to returns of election" of such officers. The first section refers only to the officers specifically named, and does not include the Commissioner of Pensions. The second section has reference to returns of the election of "every other officer" where the returns are required to be made to the Secretary of State. The term "every other officer" as used in this section, as a matter of course must be construed to mean every other State-House officer in order to be constitutionally authorized under the caption of the act. We conclude that the act of 1918, as originally passed, had no reference whatever to the office of Commissioner of Pensions either as to returns of the election or terms of office of such commissioner. This, we believe, is not contrary to the contention of the plaintiff in error.

This brings us to the question whether the act of 1921 (Ga. L. 1921, p. 232) brings about a change, the result of which brings the office of Commissioner of Pensions within the provisions of the act of 1918 as amended. Our opinion is that it does not have that effect. This, we think, is true for more than one reason. First, the provisions of the act of 1918, as constitutionally affected by its caption, have reference only to the election returns of State-House Officers, and the Commissioner of Pensions is not a State-House Officer. The act of 1921 does not undertake to amend the caption of the act of 1918. The act of 1921 employs words of broader significance than those used in the act of 1918. It has reference to the returns of the election "of other civil officers," etc. "Civil officer," as used in the amendment, is not necessarily a "State-House Officer." The Commissioner of Pensions is a "civil officer," but not a "State-House Officer." It undertakes to amend the act of 1918, and here again we find language containing the element of uncertainty. The last act uses these words: "That section 2 of the above-recited act be amended by striking

*from* [?] said section 2." We have italicized the word "from," because it suggests the inquiry, what did the General Assembly mean by the use of that word? Was it intended to strike some part of section two? If so, what part of section two was to be stricken? Was it intended to strike the entire section? If so, the word "from" is meaningless. For the purpose of this discussion we resolve all doubt on this question in favor of the construction of the plaintiff in error, and treat the act as striking the entire section two of the act of 1918, and substituting in lieu thereof the language of the new act. Construed, therefore, as we think necessary, the act of 1918, even after the passage of the act of 1921, does not include the office of Commissioner of Pensions; and therefore the time at which the term of office of Commissioner of Pensions begins and ends remains as the law provided prior to the approval of the act of 1918, that is in the act of 1908. Another reason why we think this is true is that if the law as it stood prior to the act of 1918 has been amended or repealed, this has necessarily come about by implication. It is a principle well settled that repeals by implication are not favored. A repeal by implication takes place "only in so far as a statute is clearly repugnant to a former statute, and so irreconcilably inconsistent with it that the two cannot stand together, or is manifestly intended to cover the subject-matter of the former and operate as a substitute for it, that such a repeal will be held to result. The intention to repeal must be plain and unmistakable." *Johnson* v. *So. Mut. B. & L. Assn.,* 97 *Ga.* 622, bottom of page 623 (25 S. E. 358); *Gray* v. *McLendon,* 134 *Ga.* 224, 232 (67 S. E. 859); *Verdery* v. *Walton,* 137 *Ga.* 213, 216 (73 S. E. 390).

Applying the principles quoted, we think it is clear that there has been no repeal of the act of 1908 by implication. Furthermore, as we have held that the act of 1918, when approved, did not change the law, the next question would be whether the act of 1921, even if conceded to have reference to the Commissioner of Pensions, and furthermore to be a valid amendment of the act of 1918 in that particular, would have the effect of repealing impliedly the former law in regard to the Commissioner of Pensions by the act of 1918, when the amendment was passed and approved three years thereafter. This view must necessarily be rejected, because such implied repeal is not justified by reason or authority. The

act of 1921 only purported to change section 2 of the act of 1918, and did not purport to change section 3. Could this have the effect of enlarging the scope of section 3 of the act of 1918, which provides that " the terms of the officers last mentioned " (in section two) " shall commence on the first day of January next after the election " ? Plaintiff in error contends that such is the effect of the act of 1921, and that it does enlarge the scope of section three of the act of 1918, so that it impliedly repeals the act of 1908, fixing the term of the Commissioner of Pensions and when it shall begin. In our opinion this contention is not sound. It is not in accord with the rule as to implied repeals, stated above.

4. One of the grounds of demurrer, as shown above, was that the third section of the act of 1918 is in conflict with art. 3, sec. 7, par. 8, of the State constitution (Civil Code (1910), § 6437), which provides: " No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." It is contended that this section offends the constitution in both of the above-stated particulars; that is, that the caption of the act refers only to how the returns of elections for certain public officers shall be made, whereas sections 1 and 2 provide in accordance with the caption for the returns of elections of officers mentioned, and section 3 provides " that the terms of the officers last mentioned shall commence on the first day of January next after they are elected." We think the trial judge correctly sustained this demurrer, because the act is obviously unconstitutional for both of the reasons assigned. The caption of the act refers to only one subject-matter, to wit, the returns of elections. It makes no reference to any other subject; and while it does contain the phrase " and for other purposes," as is usually found in acts of the General Assembly, this phrase is not broad enought to cover the totally distinct, separate, and important legislation with reference to the terms of State-House Officers and when they shall begin. We are familiar with the previous rulings in regard to the meaning of the phrase above quoted. We are aware that a substantial and not a literal compliance with the provisions of the constitution above named is all that is necessary; that it was never contemplated that the title should give a complete synopsis of the act; that the title need only indicate the general scope and purpose

of the act. "Such words may well include and render constitutional incidental provisions which are germane to and bear a generic relation to the general subject expressed in the title." *Butner* v. *Boifeuillet,* 100 *Ga.* 743, 753 (28 S. E. 464). While the "election returns" of officers and the "terms of office" both have reference to public officers, the subject of the "election returns" and the length of and the times at which the terms begin have no such relation to one another as will permit them both to be dealt with under the caption which specifically refers to one of these subjects. A different question might have been presented if the caption of the act of 1918 had been broad enough to include legislation generally affecting the named public officers. How far the caption for that purpose must indicate the details need not be decided. It is sufficient to say that where the caption singles out a specific subject, such as the "returns of elections," it cannot be presumed from the caption, even when it includes the words "and for other purposes," that it was the legislative intent as restricted by the constitution to deal with any or all subjects concerning the office of public officials. Having held that section 3 of the act of 1918, for the reasons stated, is unconstitutional and void, it necessarily follows, if for no other reason, that the trial judge properly dismissed the petition for quo warranto. *Corenblum* v. *State,* 153 *Ga.* 596 (113 S. E. 159).

5. Plaintiff in error in his brief and in his argument before this court contended that the demurrers were speaking, and insufficient to raise the issues adjudicated by the trial court. In this we cannot concur. The demurrers are not subject to the criticism made.

*Judgment affirmed. All the Justices concur, except Hines, J., dissenting.*

BECK, P. J. I concur in the result reached in this case, because I am of the opinion that section 3 of the act of 1918 referred to in the opinion is unconstitutional. I do not concur in the opinion of the majority that the Pension Commissioner is not a State-House Officer. I think that officer falls within the proper definition of the term, "State-House Officer."