# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1927

---

### FRIEDMAN *v.* MIZELL.

1. Section 3 of the act of 1881, now embodied in section 1684 of the Civil Code of 1910, was repealed by implication by the act of December 12, 1894 (Acts 1894, p. 85), and from January 1, 1895, to December 16, 1895, a physician was not required to register by said section of the act of 1881.

2. The provisions of said section of the act of 1881 were put in the Code of 1895, § 1479, and that of 1910, § 1684, by the codifiers, and said Codes were adopted by the legislature, the former by the act of December 16, 1895 (Acts 1895, p. 98), and the latter by the act of August 15, 1910 (Acts 1910, p. 48); and from December 16, 1895, to August 18, 1913, physicians licensed under said act of 1894 were required to register, as required by such provisions.

3. By the act of August 18, 1913 (Acts 1913, p. 101), the legislature sought to repeal expressly the act of 1894. If for constitutional reasons this attempted express repeal was abortive, then the act of 1894 was repealed by implication by the act of 1913, and after August 18, 1913, physicians licensed under the acts of 1894 and 1913 were not required to register in accordance with such provisions of the act of 1881; and a physician licensed under the act of 1894, who had caused his certificate to be recorded as required by that act, could recover for services rendered after August 18, 1913, although the record of his certificate had been made prior to the date last named.

No. 5534. MARCH 17, 1927.

The Court of Appeals (in Case No. 17366) requested instruction from the Supreme Court upon the following question: Where a physician of this State began the practice of medicine subsequently

---

Physicians and Surgeons, 30 Cyc. p. 1554, n. 66.

to the passage of the act of the General Assembly approved Dec. 12, 1894 (Ga. L. 1894, p. 85), and where he has complied with all the requirements of that act (one of the requirements being that a physician shall have his license recorded in the office of the clerk of the superior court of the county of the physician's residence), but where he has failed to register his name, residence, etc., in the office of the clerk of the superior court of the county wherein he resides and is practicing medicine, as required by the act of the General Assembly passed in 1881 and now embodied in sections 1684 et seq. of the Civil Code of 1910, is such physician entitled to recover for professional services rendered by him? In other words, in such a case has the above-cited provision of the act of 1881 been repealed or superseded by the provisions of the above-cited act of 1894?

*Noah J. Stone,* for plaintiff in error.

*Kobak & Levy* and *Fuller & Bell,* contra.

HINES, J. Section 3 of the act of September 28, 1881, provides, "That every person now lawfully engaged in the practice of medicine within this State shall, on or before the first day of December, 1881, and every person hereafter duly qualified to practice medicine shall, before commencing to practice, register in the office of the clerk of the superior court of the county wherein he resides and is practicing, or intends to commence the practice of medicine, in a book to be kept for that purpose by said clerk, his name, residence, and place of birth, together with his authority for practicing medicine, as prescribed in this act." Acts 1880-1, pp. 172, 173. This section of this act was codified in section 1479 of vol. 1 of the Code of 1895, and in section 1684 of the Civil Code of 1910, except the language, "as prescribed in this act," was supplanted by the language, "as prescribed in this chapter." This section of the act of 1881 became merged in the above sections of the Code of 1895 and the Code of 1910. Section 7 of the act of 1894, mentioned in the question propounded by the Court of Appeals, in part declares, "That before any person who obtains a certificate from any board, or from a committee of any board, may lawfully practice medicine or surgery in this State, he shall cause the said certificate to be recorded in the office of the clerk of the superior court in the county in which he resides." This provision of said act was codified in vol. 1 of the Code of

1895, § 1488, and it was likewise codified in the Civil Code of 1910, § 1694. Thus this provision in the act of 1894 became merged in these sections of these Codes. All of the provisions of the act of 1894 were codified in vol. 1, of the Code of 1895, §§ 1482 to 1491, inclusive, and in the Civil Code of 1910, §§ 1687 to 1697, inclusive. The Code of 1895 was adopted by the act of the legislature of December 16, 1895. Acts 1895, p. 98. The Code of 1910 was adopted by the legislature, by the act of August 15, 1910. Acts 1910, p. 48.

With this brief history of the acts of 1881 and 1894, we come to consider the question propounded by the Court of Appeals; and that is, whether the above provision of the act of 1881 has been repealed or superseded by the provisions of the act of 1894. The act of 1894 did not expressly repeal the above provisions of the act of 1881. Did it impliedly repeal that provision? We think it did. That act was passed to regulate the practice of medicine in this State. That act defined the words "practice medicine," and provided that no person should practice within this State unless he had previously been legally authorized so to do by a diploma from an incorporated medical college, medical school or university, and had complied with the other requirements. If a physician possessed such diploma, all he had to do to authorize him to practice in this State was to register, in a book to be kept by the clerk of the superior court of the county of his residence, his name, residence, place of birth, and his authority for practicing medicine, these facts being required to be verified by his affidavit. By this act, if any registered physician in this State changed his residence from one county to another county therein, he was required to register again in the clerk's office of the county to which he removed and in which he intended to reside and practice medicine. The above provisions of this act are included in its first four sections. By its fifth section, any person who violated either of said four sections, or who practiced or offered to practice medicine, without lawful authority, or under cover of a diploma or license illegally obtained, was deemed guilty of a misdemeanor. Section 6 of this act exempted from its operation commissioned medical officers of the United States army, navy, or marine hospital service, legally qualified dentists, and women practicing only midwifery. By its 7th sec-

tion  this act repealed all laws creating any board of physicians for the examining and licensing of physicians, and expressly provided that the only requisite qualifications of practitioners of medicine should be those set forth in said act and mentioned above. Thus the subject-matter of the qualifications of physicians to practice medicine and surgery in this State were fully and completely dealt with.

The act of 1894 was passed to establish Boards of Medical Examiners for this State; to define their duties and powers; "to protect the people from illegal and unqualified practitioners of medicine and surgery; to regulate the issuing and recording of licenses;" and to prescribe penalties for its violation. Acts 1894, p. 85. This act created three separate boards of medical examiners. One was to consist of five members of the regular school of medicine; another of five members of the eclectic school of medicine; and a third of five members of the homeopathic school of medicine. This act prescribed the qualifications of the members of said boards, their terms and oath of office, and fixed the dates of the meetings of the boards. It provided "that it shall be the duty of each board . . to examine only persons making application to it who are graduates of an incorporated medical college, school, or university, that requires not less than three full courses of study of six months each, . . who shall not by the provisions of this act be exempt from such examination." But it provided that any person who at the time of its passage had matriculated as a student of medicine at any medical college after graduation, and that any person from another State who had graduated prior to April 1, 1895, at a lawfully chartered medical college requiring only two full courses of study, should be eligible for examination and license, if the applicant held a lawfully conferred diploma from an incorporated medical college which conformed to the system of practice represented by the board to which the application for license was made, unless the applicant desired to practice a different system from that recognized in his diploma, in which event he should apply to the appropriate board. If the applicant desired to practice a system not represented by either of the boards created by this act, then he could elect the board before which he would appear for examination. When an applicant had passed an examination satisfactory as to proficiency before any

board, then the president thereof was required to grant to the applicant a certificate to that effect. Before such applicant could lawfully practice medicine or surgery in this State, he must have had such certificate recorded in the office of the clerk of the superior court of the county in which he resided. It was made unlawful for any person, after January 1, 1895, to commence the practice of medicine or surgery within this State without complying with the provisions of this act. This act did not apply to persons then lawfully engaged in the practice of medicine or surgery in this State, to any commissioned medical officer or contract surgeon of the United States army, navy, or marine hospital service, nor to any physician or surgeon residing in any State or Territory of the United States or in the District of Columbia, who might be bona fide called in consultation in a special case with a legally qualified physician or surgeon residing in this State. It then defined practicing medicine or surgery, and made it a misdemeanor for any person to practice medicine or surgery in this State in violation of the provisions of this act. It repealed "all laws and parts of laws in conflict with this act." Thus this act dealt fully and completely with the qualifications of physicians to practice medicine and surgery in this State. It covered the entire field of the act of 1881.

It is well settled that repeals by implication are not favored. *Branch Bank* v. *Kirkpatrick, 5 Ga.* 34; *Haywood* v. *Savannah, 12 Ga.* 404; *Erwin* v. *Moore, 15 Ga.* 361; *Griggs* v. *Macon,* 154 *Ga.* 519, 526 (114 S. E. 899). "There must be a positive repugnancy between the provisions of the new law and those of the old." Wood *v.* U. S., 16 Pet. 342, 362 (10 L. ed. 987); *Branch Bank* v. *Kirkpatrick,* supra; *Griggs* v. *Macon,* supra. The necessary implication of repeal must be so strong that it is equivalent to an express repeal. *City of Atlanta* v. *Gate City Gas Light Co., 71 Ga.* 106, 122. But when a statute is clearly repugnant to a former statute, and so irreconcilably inconsistent with it that the two can not stand together, or is manifestly intended to cover the subject-matter of the former and operate as a substitute for it, an implied repeal will be held to result. *Johnson* v. *So. Mut. B. & L. Asso., 97 Ga.* 622 (25 S. E. 358); *McGregor* v. *Clark, 155 Ga.* 377, 385 (116 S. E. 823). The repeal in any case must be measured by the extent of the conflict or inconsistency between

the acts; and if any part of the earlier act can stand, or is not superseded or affected by the later act, it will not be repealed. *Gray* v. *McLendon,* 134 *Ga.* 224 (67 S. E. 859). As a general rule, a statute which revises the subject-matter of a former one works a repeal without express words to that effect. It may be true that where the latter act contains a provision that all laws and parts of laws in conflict with it are thereby repealed, there is an implication that parts of the former act, not expressed in the new act, are not repealed. *Johnson* v. *So. Mut. B. & L. Asso.,* supra; Sutherland, Statutory Construction, §§ 138 et seq., 154, 155; Lewis *v.* Stout, 22 Wis. 234.

After giving due consideration to these well-established canons for our guidance in determining whether or not a statute has been repealed by implication, we are of the opinion that the legislature manifestly intended, in passing the act of 1894, to cover the subject-matter of the act of 1881, and to supersede the earlier act by the later one. But the makers of the Code of 1895 codified sec. 3 of the act of 1881 as sec. 1479 of vol. 1 of that Code. That Code was adopted by the act of December 16, 1895. Thus this provision of the act of 1881 was revivified and again made the law. So while we hold that this provision of the act of 1881 was impliedly repealed by the act of 1894, it was only so repealed for the brief period from January 1, 1895, to December 16, 1895. By the act of August 18, 1913, the legislature undertook to expressly repeal sections 1687 to 1697, inclusive, of volume 1 of the Code of 1910, into which had been codified all the provisions of the act of 1894; and undertook to cover the subject-matter of the qualifications and licensing of physicians in this State. From what we have said above it follows that section 1684 of the Code of 1910, which codified section 3 of the act of 1881, was impliedly repealed by the act of 1913. So, if the physician, whose fees are involved in this case, was licensed to practice under the act of 1894, between January 1, 1895, and December 16, 1895, registry of his name, residence, place of birth, and his authority to practice medicine was not required by law. If he was licensed to practice between December 16, 1895, and August 18, 1913, such registry was required: and for such failure to register he could not recover for professional services rendered during that period. *Murray* v. *Williams,* 121 *Ga.* 63 (48 S. E. 686). As, however, under the

questions propounded by the Court of Appeals, he was licensed to practice under the act of 1894, and had complied with all its requirements, he necessarily had caused his certificate to be recorded; and as we may presume from the recent date of this litigation that he is suing for services rendered during the period elapsing after August 18, 1913, during all which period he had had his certificate and it had been recorded, he would be entitled to recover for such services, even though it may be that the record of his certificate antedated such period. *All the Justices concur.*