WOOD *v.* ARNALL.

No. 13000.   DECEMBER 4, 1939.

*William Butt, Allison S. Prince, Thomas H. Crawford, E. M. McCanless, H. G. Vandiviere, Howell Brooke, Henderson & Spence, Roscoe Pickett, A. H. Burtz, Watkins Edwards, Blair & Gardner, J. Glenn Giles, Fred Morris,* and *Morris & Welsch,* for plaintiff.

*A. H. Freeman, Stonewall H. Dyer, R. O. Jones, William Y. Atkinson, Walter D. Sanders, J. W. Powell, F. Douglas King, Garland M. Jones, W. L. Stallings, Jannar B. Davis, Stanford Arnold, Willam A Hart, Charles H. Arnall, J. L. Jones,* and *J. L. Glover,* for defendant.

GARDNER, Judge. ■ A quo warranto inquires into the right of any person to any public office the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein. Code, § 64-201. It appears that in the general election in November, 1938, Honorable M. J. Yeomans was duly elected attorney-general for the State of Georgia for a term of two years to run concurrently with that of the Governor, and to end on December 31, 1940. Judge Yeomans occupied the office until February 2, 1939, when he tendered his resignation to the Governor, who accepted the resignation and appointed the respondent, Arnall, who subscribed the oath of office, and has continued to discharge the duties thereof since that date. Since the inquiry is primarily into the right of the respondent to hold the office, the duties of which he is discharging, we will first address ourselves to that question. By an act approved February 24, 1937, the General Assembly provided for a statewide election to be held on Tuesday after the first Monday in June, 1937, and biennially thereafter, "in which vacancies shall be filled in any and all State and county offices, which vacancies may have occurred by reason of the death or resignation of the incumbent or nominee therefor, or otherwise, since the last preceding general election." Ga. L. 1937, p. 712 (Code, Supp. §§ 34-1304, 34-1305, 34-1306). Could an election be held under this statute so as to end respondent's tenure? Paragraph 14 of section 1 of article 5

(Code, § 2-2614) of the constitution of the State provides as follows: "When any office shall become vacant, by death, resignation, or otherwise, the Governor shall have power to fill such vacancy, unless otherwise provided by law; and persons so appointed shall continue in office until a successor is commissioned, agreeably to the mode pointed out by this constitution, or by law in pursuance thereof." The constitution, article 6, section 10, paragraph 1 (Code, § 2-3801), provides that the attorney-general "shall be elected by the people at the same time, for the same term, and in the same manner as the Governor." The manner of electing a Governor is fixed by article 5, section 1, paragraphs 3, 4, 5, and 6 (Code, §§ 2-2603 to 2606, inclusive). These provisions of the constitution, so far as here material, are as follows:

§ 2-2603. "The first election for Governor, under this constitution, shall be held on the first Wednesday in October, 1880, and the Governor-elect shall be installed in office at the next session of the General Assembly. An election shall take place biennially thereafter, on said day, until another date be fixed by the General Assembly. Said election shall be held at the places of holding general elections in the several counties of this State, in the manner prescribed for the election of members of the General Assembly, and the electors shall be the same." (A different date has been fixed by statute. Code, §§ 34-1302; 40-101).

§ 2-2604. "The returns for every election of Governor shall be sealed up by the managers, separately from other returns, and directed to the president of the Senate and speaker of the House of Representatives, and transmitted to the secretary of State, who shall, without opening said returns, cause the same to be laid before the Senate on the day after the two houses shall have been organized, and they shall be transmitted by the Senate to the House of Representatives."

§ 2-2605. "The members of each branch of the General Assembly shall convene in the Representative Hall, and the president of the Senate and speaker of the House of Representatives shall open and publish the returns in the presence and under the direction of the General Assembly; and the person having the majority of the whole number of votes, shall be declared duly elected Governor of this State; but, if no person shall have such majority, then from the two persons having the highest number of votes, who shall

be in life, and shall not decline an election at the time appointed for the General Assembly to elect, the General Assembly shall immediately, elect a Governor *viva voce;* and in all cases of election of a Governor by the General Assembly, a majority of the members present shall be necessary to a choice."

§ 2-2606. "Contested elections shall be determined by both houses of the General Assembly in such manner as shall be prescribed by law."

As to vacancies in the office of Governor, paragraph 8 of the same article and section (Code, § 2-2608) provides as follows: "In case of the death, resignation, or disability of the Governor, the President of the Senate shall exercise the executive powers of government until such disability be removed, or a successor is elected and qualified. And in case of the death, resignation, or disability of the President of the Senate, the Speaker of the House of Representatives shall exercise the executive powers of the government until the removal of the disability, or the election and qualification of a Governor." In paragraph 9 of the same article and section (Code, § 2-2609), it is provided that "The General Assembly shall have power to provide by law, for filling unexpired terms by special elections." This provision clearly relates only to the office of Governor and the other offices of the executive department to which article 5 of the constitution is addressed, the other officers of that department being, as declared in paragraph 1 of section 1 (Code, § 2-2601), to be the secretary of State, comptroller-general, and treasurer. The office of attorney-general is not classed as an executive office; but is created by article 6, which relates to the judiciary. It is yet true that according to the constitution (Code, § 2-3801) this office shall be filled "in the same manner" as the office of Governor; and it has been held that the attorney-general is a "Statehouse officer." *McGregor* v. *Clark,* 155 *Ga.* 377 (2) (116 S. E. 823). There is no specific provision in the constitution relating to the manner of filling a vacancy in the office of attorney-general, but the general provision of that instrument as first quoted in this opinion is sufficiently broad in scope to cover the subject, and it was under this provision that the appointment of the respondent was made. A proper construction of this provision, in connection with the others quoted, is the substantial question for determination in this connection. It may be true, as con-

tended by counsel for the relator, that the declaration that the attorney-general "shall be elected by the people at the same time, for the same term, and in the same manner as the Governor," refers only to elections for a full or regular term, when considered alone and apart from other provisions. The declaration as to the *manner* of election is important, however, in construing and applying the general clause as to the filling of vacancies by the Governor. The constitution of 1868 contained a general clause on vacancies, identical in language except that it contained the word "appointed" instead of "commissioned."

In *Gormley* v. *Taylor*, 44 *Ga.* 76, this court, speaking of that provision, said that it "applies to *all* officers of every kind, no matter how or by whom the office is to be permanently filled," and that the person appointed "is to hold until a successor is appointed according to the regular method for filling the office." So, whatever is the "regular method" for filling the office permanently, the appointee shall continue in office until a successor is chosen according to that method, which, it may be assumed for the purposes of this case, would not include *time* as related to an election to fill a vacancy. Compare *Pittman* v. *Ingram*, 184 *Ga.* 255, 258 (190 S. E. 794). As shown by statute, the General Assembly has considered that even as to an election to fill a vacancy in the office of Governor, ascertainment and declaration of the result should be made by that body, according to the regular method of filling the office permanently. The analogy is clear. Code, §§ 40-102 ; 40-103. As we have seen, the regular method of filling the office of attorney-general for a full term is by election "in the same manner as the Governor." Accordingly, the returns for the election are to be directed to the President of the Senate and to the Speaker of the House of Representatives, and published in the presence of the General Assembly, which shall declare the result. For some purposes, the word *election* may refer to the action of the voters in casting their ballots or expressing a choice. It may have different meanings, according to its context, and the purpose and intent with which it is employed. See Harris *v.* Tucker, 54 Ala. 205, 210; State ex rel. Norwood *v.* Nelson, 141 Minn. 499 (169 N. W. 788). But the regular *method* of electing an attorney-general would include ascertainment and declaration of the result by the General Assembly. State *v.* McCoy, 2 Marv. (Del.) 576 (43 Atl. 270);

Waring v. Wilroy, 32 N. C. 329, 332. Although the relator shows that he received a plurality of the votes cast for the office of attorney-general in the June general election of 1939, the act creating that election did not provide for such ascertainment and declaration of result, and this fact would tend to show that the statute was not intended by the General Assembly to apply to the office of attorney-general.

We do not overlook another statute which requires that the returns of regular elections for the office of attorney-general shall be made to the secretary of State, who shall consolidate the vote, declare the result, and certify to the Governor the name of the person elected, and the Governor shall issue commission according to the certificate of the secretary of State. Code, § 34-2202; Ga. L. 1918, p. 154; Ga. L. 1921, pp. 91, 232; *Napier* v. *McLendon*, 151 *Ga.* 559 (107 S. E. 542); *McGregor* v. *Clark*, 155 *Ga.* 377 (116 S. E. 823). As shown by the Senate and House journals, however, the General Assembly, from the very first election in 1880, with three possible exceptions, has canvassed the returns and declared the result as related to that office, along with the returns as to Governor, secretary of State, comptroller-general, and treasurer, thus manifesting original and sustained opinion by the legislative department that such is the intendment of the constitution. We deem it sufficient to call attention to only a few of these publications: Senate Journals for the years 1931, pp. 26, 27; 1933, pp. 22 et seq.; 1935, pp. 17, 27; 1937, pp. 11, 29, 30, 37; 1939, pp. 13, 17. House Journals for the years 1931, pp. 30-32; 1933, pp. 178-80; 1935, pp. 93, 94, 95; 1937, pp. 18 et seq.; 1939, pp. 26-35. As a matter of fact, the journals are to the same effect as to all State elections since the adoption of the constitution, except that the office of attorney-general is not expressly mentioned in the journals of 1900, 1917, and 1919. See Senate Journals, 1880, p. 84; 1900, p. 73; 1917, p. 193; 1919, p. 24.

Such we think is the proper construction of the constitution. This view of the matter is further supported by the amendment ratified in 1932, providing: "The General Assembly shall meet on the second Monday in January, 1933, and biennially thereafter on the same date until the day shall be changed by law. Such session shall continue no longer than ten days, and the only business which shall be transacted thereat shall be the election of of-

ficers of the General Assembly and the organization of same; the inauguration of the Governor-elect, and other Statehouse officers, whose terms of office run concurrently with that of the Governor; the election or appointment of committees of each house; the election of the Governor and other Statehouse officers, in the event of no election by the people as under the present provisions of this constitution; the decision of contested elections for Governor and other officers as under present provisions of the constitution. . . The terms of the present incumbents of the offices of Governor and those which are for the same as the Governor shall expire upon the inauguration of the Governor at the first biennial session held under the provisions hereon in January, 1933." Ga. L. 1931, p. 1053. Code, § 2-1503. It will be noticed that this amendment provides for "inauguration of the Governor-elect, and other Statehouse officers, whose terms of office run concurrently with that of the Governor;" the attorney-general being, as shown above, a Statehouse officer whose term of office runs concurrently with that of the Governor.

From what has been said, the statute last referred to, Code, § 34-2202, providing for returns to the secretary of State as to this office, would seem to be inconsistent with the constitution. It is relevant in this case, however, only because of the incorporating reference thereto in section 1 of the act of February 24, 1937 (Ga. L. 1937, p. 712; Code Ann. Supp., § 34-1304). This is true for the reason that the relator is necessarily relying upon the latter statute, since it alone provided for the election in which he claims to have been elected. This statute was attacked by the respondent as repugnant to the constitutional provisions relating to the time and manner of electing an attorney-general and a Governor, and the filling of vacancies. We agree that this statute would be unconstitutional, as contended, if it should be construed as applying to the office of attorney-general, but, in view of the presumption of validity, we think it should be construed as not applying to that office. *Mayes* v. *Daniel,* 186 *Ga.* 345 (198 S. E. 535); *Fordham* v. *Sikes,* 141 *Ga.* 469 (81 S. E. 208). The provisions of the constitution "are fundamental and controlling. They rank above all legislative or executive powers in relation to the subject to which they refer" (*Pittman* v. *Ingram,* supra), and in this case must be looked to in determining whether the relator was elected ac-

cording to the "regular method." Moreover, while the amendment of 1932 has been referred to only as supporting the general conclusion as to canvassing returns and declaration of result by the General Assembly, this amendment would seem to be both controlling and exclusive, as to what elections are now to be canvassed and declared by that body, including election of attorney-general.

It appearing that the June election was not one for election of attorney-general according to regular method, the claim of the relator was not sustainable, and his petition was properly dismissed on general demurrer. The tenure of respondent was not terminated. The question here involved is not whether an official regularly elected by the people at the time and place prescribed by law could be deprived of his office by virtue of the mere failure of the General Assembly to canvass and declare the result as directed by the constitution, for manifestly the will of the people could not be thus defeated; but the question is whether the relator was in fact elected at the proper time and place within the purview of the constitution; and the fact that the act of 1937 did not provide for canvassing returns and declaration of result by the General Assembly, as it would be the duty of that body to do with respect to office of attorney-general as a Statehouse office with a term running concurrently with that of the Governor, demonstrates that the June election was not intended by the legislature as one in which to fill a vacancy in the office of attorney-general. The questions presented here were not involved in *Britton* v. *Bowden,* 188 *Ga.* 806 (5 S. E. 2d, 47). The decisions in *Moore* v. *Smith,* 140 *Ga.* 854 (79 S. E. 1116), *Aycock* v. *State* ex rel. *Boykin,* 184 *Ga.* 709 (193 S. E. 580), and the opinions of the Justices in *Mitchell* v. *Pittman,* 184 *Ga.* 877 (194 S. E. 369), dealt with different constitutional provisions, and have no bearing upon the question now presented. See reference to these cases in *Stephens* v. *Reid,* 189 *Ga.* 372.

Respondent contended, among other things, that his appointment was fixed by the constitution for the whole remainder of the unexpired term, that is, until election of "a successor" of Judge Yeomans for the next regular or full term, and therefore that his tenure was beyond the reach of legislative authority. We do not pass upon this question. We are simply holding that the act of 1937 did not by its terms apply to the office of attorney-general,

and in this view it is unnecessary to deal with the question whether an election such as might terminate tenure in such case could be created by the General Assembly, consistently with the general clause as to filling vacancies. Code, § 2-2614.

■ It appears from an exhibit attached to the petition, and reference to the vote cast for solicitor-general of the Brunswick Judicial Circuit contained therein, that more than thirty thousand voters participated in the general election of June 6, 1939, but that the relator received only 3532 votes for the office of attorney-general claimed by him, and that in all only 3549 votes were cast in reference to this office. We are asked by the respondent to take judicial cognizance of the fact that there are several hundred thousand qualified voters in the State, that the Australian-ballot law prescribing the form of official ballot, including statement of officers and of candidates, is of force in more than half of the counties of Georgia, and on basis of these additional facts, considered with those expressly alleged, to hold that no election for the office of attorney-general was *submitted* in the regular June election of 1939, but that, even if so, the votes cast for relator were invalid. It is also contended that, in view of all of the foregoing, including facts of which it is insisted this court should take judicial notice, it is apparent that there was no actual expression of choice by the people as to any person to fill the office of attorney-general, and hence that there was no real election for this office in contemplation of law. Still other contentions are made by the respondent; but in view of what is held in the first division, we deem it unnecessary to make any decision upon other questions. In any view of the additional contentions, the relator did not show title to the office. The general demurrer to the petition was properly sustained.    *Judgment affirmed. All the Justices concur.*