Ruffin, C. J.
 

 The only question is^ whether the State can bring an action in a Superior Court on a bond for a less sum than $100 ; and, as we think, she undoubtedly may. This results plainly from a few undeniable elementary principles. In the first place, the Superior Court is one of general jurisdiction, being the highest Court of original jurisdiction in the State, and it may take cognizance of all suits, which are not taken from it by statute. Besides, the act of 1777,
 
 ch.
 
 115,
 
 sec. 2,
 
 expressly enacts, that it shall have legal jurisdiction of
 
 “allpleas of the State,”
 
 and criminal matters of what nature, degree or denomination soever, whether brought before the Court by original or mesne process,
 
 certiorari,
 
 writ of error, appeal, or any other way or means, except where it is or may be otherwise directed by act of the Legislature. To oust the jurisdiction, then, it is requisite to shew a statute, that pleas of the State for sums under $60, or $100, shall not be within the cognizance of the Superior Court, but shall be brought before some other tribunal. There is no such statute. No doubt, the motion in this case was founded on the 40th and 42nd
 
 sections of the Revised Statutes, chap.
 
 SI; which pro vide # that, if a suit be commeuced in the Superior Court for a
 
 *50
 
 sum less than $100 due by bond, it shall be dismissed. But it is a known and firmly established maxim, that general statutes do not bind the sovereign, unless expressly mentioned in them. Laws are
 
 prima facie
 
 made for the government of the citizen and not of the State herself. The very section under consideration has a provision which furnishes an example of the rule, that the ' sovereign is not to be brought within ike purview of a statute by general woi’ds, but only by being expressly named. The provision is, that, when a suit is dismissed, or the plaintiff non suited upon the ground that the case is not within the jurisdiction of the Court, the plaintiff shall pay all costs. Now, no one will say, that there can be judgment against the State for costs in any case. But it is unnecessary to exemplify the rule, as it is well established as applying generally to the rights of the public. Upon this ground, therefore, and by itself, the action was cognizable in the Superior Court. The remark of his Honor, that this proceeding is by writ, according to the course of the common lav/ ; and therefore that the Court had not jurisdiction, refers, it is presumed, to the statutes, which authorize judgments upon motion against accounting officers or other debtors to the State; 1793,
 
 ch.
 
 383, and 1822,
 
 ch.
 
 1150. It seems to have been supposed, that these acts create the jurisdiction in these cases; and it is thence inferred, that without a similar act expressly embracing the proceeding by writ and declaration, there is no jurisdiction of an action of the latter kind. But that is reversing the rule of law, and supposing that there must be express enactments in order to vest the Courts with jurisdiction of pleas of
 
 the State ;
 
 whereas it requires a prohibitory statute to oust the, jurisdiction. The acts alluded to, were not necessary to confer jurisdiction of demands by the State, but their purpose was merely to give the summary proceedings by motion ; and they do not affect the remedy at common law.
 

 
 *51
 
 There is, also, another consideration, which renders it plain, that every plea of the State is cognizable in a Court of record. The State, as an artificial being, cannot appear before a judicial tribunal otherwise than by attorney; and she has appointed no officers to represent her in her pleas before a Justice of the Peace : nor are there any attorneys at law, who, as such, represent suitors out of Court. It is not to be supposed, that the State’s revenues are to rest upon evidences of debt held by Justices and Constables, instead of appearing of record, and being under the immediate control of the great revenue and law officers. These observations are peculiarly applicable to that part of his Honor’s reasoning, which is drawn from the Acts relative to the debts for Cherokee land. There is nothing in those Acts, which seems to have any bearing upon this question. The Acts are supposed to be those of 1840, c. 4, and 1844, c. 2, which provide for the appointment of an Agent of the State, resident in Macon or Cherokee County, with authority to receive payment from the debtors, and to bring suit on the bonds, when directed by the Treasurer, or when he tbrnks the interest of the State may require it. That means only, that the Agent shall cause proper suits to be instituted ; and it no more makes it his duty or confers the authority on him, to appear before a Justice of the Peace out of Court, than it does to appear before a Court of record, as the attorney at law of the State. It creates no change of the law as to the jurisdiction of the Courts.
 

 We do not say that a Justice could not give judgment for the State, if she were to bring a suit before him ; but clearly the State can sue in her own Courts of record, until she shall expressly deny herself the right.
 

 Per Curiam. Judgment reversed, and a writ of
 
 -procer* dendo
 
 awarded.