## Case No. 16,659.

### UNITED STATES v. WEISE.

[2 Wall. Jr. 72;[1] 14 Law Rep. 260; 4 Am. Law J. (N. S.) 88.]

Circuit Court, E. D. Pennsylvania. July 25, 1851.

STATE TAXATION—PROPERTY OF UNITED STATES—CONSTRUCTION OF STATUTES.

1. An act of a state legislature laying a tax on all real estate, to wit, on various sorts of real estate specified by the act, and as such shown to be private property, does not include property of any sort of the United States within its territory.

[Cited in Van Brocklin v. Anderson, 117 U. S. 176, 6 Sup. Ct. 684.]

[Cited in brief in Finley v. Philadelphia, 32 Pa. St. 382; Mintzer v. Montgomery Co., 54 Pa. St. 140.]

2. Any general words are controlled by the specifications.

3. Whether or not a state has power to tax such property, and granting that it has, it cannot enforce the tax by levy and seizure.

[4. Cited in U. S. v. Griswold, Case No. 15,266, to the point that the general words of a statute do not include the government or affect its rights, unless such purpose be clear and indisputable on the face of the act.]

In 1844, the legislature of Pennsylvania passed a tax law, by which they enacted that "all real estate, to wit: houses, lands, lots of ground and groundrents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar-houses, malt-houses, breweries, tan-yards, fisheries and ferries, wharves, and all other real estate not exempt by law from taxation," should be valued and assessed and subject to taxation for "state and county" purposes.

This act did not differ essentially in its enumeration of subjects of taxation from a prior one of 1834, under which taxes had been laid in Pennsylvania, though somewhat more particular in specifying them, and more searching in a process by levy and sale prescribed for obtaining payment.

Under this act of 1844, Weise, a collector of state and county taxes for Cumberland county, Pennsylvania, presented to the officers of the United States garrison or barracks at Carlisle in that county a bill for "county and state taxes" assessed for 1851 against the said "United States garrison;" and payment being refused, proceeded in the form prescribed by the act for ordinary cases, to levy and seize upon certain property of the government and of the officers then occupying the garrison, intending to sell it to pay the tax. An application by consent for a perpetual injunction, restraining him "as well from further proceeding in the levy already made, as from making any levy upon any other property of the United States or any officer or other individual in their service, from the payment of said taxes,"—having been made against him, the following questions were propounded to the court by Mr.

[1] [Reported by John William Wallace, Esq.]

Ashmead, D. A. U. S., for the United States, and Mr. Penrose, for the collector:

I. Has a state power to tax the forts, navy-yards, custom-house, mint, garrisons, or other property of the United States used for the necessary purposes and operations of government?

II. Granting the state has such power or right, can it be enforced by levying and seizing the personal property of the United States and their officers and servants?

III. Has the state of Pennsylvania authorized the assessment of taxes on such property?

GRIER, Circuit Justice. The first question has been the subject of much discussion of late. It has been twice argued before the supreme court of the United States, but remains undecided: and as the present case can be decided without expressing my opinion upon this point, I prefer to remain uncommitted by any public expression of it, till it shall again be brought before the supreme court and fully argued there.

It has been more than once decided, "that state governments have no right to tax any of the constitutional means employed by the government of the Union to execute its constitutional powers." M'Cullough v. Maryland, 4 Wheat. [17 U. S.] 316; Weston v. City Council of Charleston, 2 Pet. [27 U. S.] 449. That the mint, navy-yards, arsenals, &c. are "means or instruments" of this description, cannot be denied. It follows necessarily that a tax imposed upon these instruments or means, as such, by a state would be illegal. But it may be contended that although a state cannot tax a "mint or navy-yard" of the United States, eo nomine, yet that where the jurisdiction over the land on which they are erected has not been ceded, it still remains subject to all the duties and burdens to which it is liable in the hands of individuals or private corporations. However this may be, it does not follow as a necessary consequence that where a state has legally imposed a tax on lands used for forts, &c., that the payment of such tax may be enforced by distress or seizure of the personal property of the United States government or its officers.

2nd. "The government of the Union is emphatically and truly a government of the people. In form and in substance it emanates from them. Its powers are granted by them, and are to be executed directly on them and for their benefit." "And this government, though limited in its powers, is supreme within its sphere of action." If the several powers intrusted to, and exercised by, the United States, and state governments, were executed by one sovereign or government, it would be an absurdity to tax the public property or means used to execute one of its powers or functions to support another. What would be gained by taxing a mint or fortification built and sustained by public taxes, in order to build a court-house or other public

building or institution, erected and sustained by the same means? Is it more reasonable that such a conflict of taxation should exist, where the people have distributed these sovereign powers to two distinct governments? But suppose it to exist, could it be tolerated that either of these sovereigns to whom these powers were intrusted should treat the other as a mere private corporation? That one should seize, distrain or levy on the public property in possession and used by the other? That the United States should tax the state-house at Harrisburgh, and seize the furniture of it while in use by the legislature of Pennsylvania? Or that a county or township tax collector should levy on the cannon in a fort. the bullion in the mint, or the soldiers' horse and arms? What an absurd conflict would thus be exhibited, where one arm of power exercised for the benefit of the people, should thus be employed to paralyse another.

Whatever, therefore, may be the power and right of a state to tax all land within her territory and make it contribute to the burdens of the state, it cannot enforce the payment of them from the United States by seizing the personal property or means used by the general government in performance of the duties and in execution of the powers Intrusted to it. To the extent of the powers granted, the United States are sovereign, and cannot be treated by the states as a mere corporation, a citizen. or a stranger, and subjected to distress and execution for claims real or pretended. by every county and township officer. If the state of Pennsylvania has any just demand against the government of the United States for the use of her soil, recourse may be had to congress, to whom an appeal for justice can always be successfully made, especially when the appellant is a state of the Union. There is no necessity for this humiliating spectacle of petty officers of a state distraining or levying on the public property of the general government and treating it as a petty corporation, or an insolvent or absconding debtor.

For this reason alone, the court would feel justified in decreeing the injunction in this case to be made perpetual; but we deem it proper to vindicate the state of Pensylvania from the charge of having authorized any of her officers to assume the powers which the respondent claims a right to execute.

3rd. The fact that the legislature of Pennsylvania ever intended to authorize the taxation of the few acres of ground occupied and used by the government of the United States for mint, custom-house. navy-yard, arsenal, and barracks, has heretofore at different times been assumed, but to my mind, has not been satisfactorily proved.

The act of 1834 for laying county rates and levies, and that of 1844 which makes provision for a state tax, do not differ very materially in their enumeration of the subjects of taxation. But as the latter is evidently intended to be the most stringent and comprehensive it will be sufficient if we can show that it does not, on a proper construction of its language, necessarily include lands used by the United States for the public benefit and as means of executing the powers intrusted to them by the people.

Referring to its language, it cannot be denied that the mint, the navy-yard, garrison, &c., are "real estate," and that the word "land" in its widest legal acceptation might include them. But I need not cite cases to show the injustice and absurdity that would often arise from construing every word of a statute in its absolute or largest sense; or that the preamble, the subject-matter. the object, aim, policy and spirit of the whole act should be sought for, and the letter of any particular section or sentence made subservient to them. It is among the earliest rules of construction that "when statutes are made, there are some things which are exempted or foreprized out of the provisions thereof, though not expressly mentioned." Reniger v. Fogossa, Plow. 13b.

When general terms are used and the statute enumerates, as the statute of 1844 does, the particulars under a videlicit, it shows the intention of the legislator to limit the comprehensiveness of the general phraseology to the particulars enumerated, and those ejusdem generis. Thus we find that the whole purview, policy and aim of this act, is to raise a revenue from private property. No mode is pointed out whereby a tax can be collected from public squares, court houses, poor houses, forts, arsenals, &c. The terms "all other real estate," should therefore be construed to mean, all other real estate ejusdem generis of that enumerated. I need not repeat the enumeration to show that every article in it is private property. The property referred to as exempted by law, is "grave yards, churches, charitable and literary corporations," all private property. Things in the service of the people or public are never specially mentioned or excepted in any act imposing taxes, because the absurdity of such an application of their terms could never be anticipated. Can the assessor of the county in which they are, demand a county, poor or road tax on the public buildings at Harrisburgh? Have the public squares in Philadelphia been taxed for state, city or county purposes? Do the county jails and court-houses pay taxes for the support of the boroughs within which they are situated? Yet these are all included in the comprehensive term "real estate;" but "they are exempted or foreprized from the provisions of the statute by the law of reason," and because it would be absurd to suppose that an act to raise revenue from private property for public purposes, should be construed to embrace property already dedicated to public use, or purchased or paid for by public money.

Pennsylvania cases (Piper v. Singer, 4 Serg. & R. 354; President, etc., v. Frailey, 13 Serg. & R. 422) show that these general terms in the tax laws refer only to private property; things enumerated "et alia, similia;" and that courthouses and bridges are not subjects of taxation though not specially exempted. The people of Pennsylvania are also citizens of the United States. The government of the United States is no alien here. It cannot be ignored, or treated as a mere corporation. The mint, the navy-yard, &c., are means to advance the prosperity, and defend the property and persons of the people of Pennsylvania, and may truly be called public property. State laws laying taxes on private property for public uses should not, from mere general or vague phraseology, be construed to include the property of the United States. A state ought not to be presumed to intend the exercise of a doubtful right, unless such intention is plainly set forth. When an officer claims a right under state authority to arrest the armaments or troops of the United States, to seize the horses and arms of her officers and soldiers (as in this case), he should be sure that he has the authority of the state for so doing.

The court is pleased to find that the legislation of Pennsylvania has not enumerated either the mint, navy-yard, arsenal, forts, or any other property held for the public benefit by the United States, and has therefore not intimated an intention to authorize her officers to interfere with the general government in the exercise of its constitutional powers. If it is the will of the people of Pennsylvania to insist upon the still doubtful right of taxing the few acres of land used by the general government for the public benefit, it will be easy for their legislature to express such intention in plain language, which cannot be misconstrued: and when the question of power is fairly raised, it will have to be decided. In the meantime, county, city and township assessors and collectors should refrain from making demands which they have no clear right to make, and certainly none to enforce in the manner attempted by the respondent in this case.

The people of Pennsylvania feel that the location of the mint, navy-yard, &c. within their territory, is a benefit and not a burthen. A power to tax is a power to destroy. For all that can be gained by the exercise of this power, it will hardly be worth while to contest the right, or insist on a demand which implies a power, if not a wish, to expel these institutions from her borders.

Let a perpetual injunction issue.

NOTE. There was nothing shown in this case, nor anything shown in the pleadings, as to whether or not these barracks had been purchased by the United States, by consent of the legislature of Pennsylvania. In cases of such purchases the legislature of that state may perhaps be considered as having itself declared that it does not consider that it has any power either to impose or authorize a tax. The question came before it in 1834. The assessors of taxes for Alleghany county, acting under the advice of counsel at Pittsburg, in Pennsylvania, laid a tax on an arsenal of the United States near that city. The land on which the arsenal stood had been bought by the United States from a private individual, and the legislature, by an act of March 19, 1816, enacted, "that the consent of the legislature of the commonwealth of Pennsylvania is hereby granted to a purchase, &c., lately made." Providing, that this shall not be so construed as to "impede or prevent the execution of any process, civil or criminal, under the authority of this state." Payment of the tax having been refused, the late Colonel Bomford, colonel of ordnance, transmitted the matter to the secretary of war of the United States, who addressed himself to the governor of Pennsylvania. After saying that the power claimed is "certainly very doubtful, and that the attempt to exercise it might lead to a troublesome litigation, or to an abandonment of the position," the secretary states that he is directed by the president to request the governor "to submit the subject to the consideration of the legislature of Pennsylvania, in the hope that a declaratory act will be passed expressly exempting this property from taxation." The governor referred the matter to the legislature, whose action was determined by the following report, which appears on their Journal: "Mr. Wallace, from the committee on the judiciary system, to whom was referred the message of the governor, &c., made the following report, viz: That in the opinion of the committee, it is perfectly clear that the commissioners of Alleghany county have no authority to impose any tax upon the property in question. By an act passed on the 19th March, 1816, the legislature of Pennsylvania gave its consent to the purchase by the United States of this property. By the constitution of the United States, it is provided that congress shall have power to exercise exclusive legislation in all cases whatever over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings. The commonwealth of Pennsylvania, then, can exercise no legislation over the property in question. The legislature could not impose a tax upon it; nor can she authorize the county authorities to do it. But the committee do not recommend any legislative action on the subject. To declare the construction of the constitution belongs to the judiciary, not to the legislature. To now pass an act in terms exempting the property from taxation, would imply that it was not heretofore exempt; which in the opinion of the committee it most certainly was. They submit the following resolution, viz: Resolved, that the committee be discharged from the further consideration of the subject."