## Lingo, marshal, *vs.* Harris.

A claim cannot be interposed *in forma pauperis* to property levied on under a tax execution issued by a municipal corporation. Such claims must be made under the provisions of §896 of the Code, and do not fall within §3733.

(*a.*) The history of claims, and the distinction between those under ordinary judgments and under tax *fi. fas.*, discussed.

(*b.*) As a general rule, the state is not bound by the passage of a law unless named therein, or unless the words of the act are so plain, clear and unmistakable as to leave no doubt as to the intention of the legislature. When there is doubt, it will be resolved in favor of the public. Municipal corporations being political divisions of the state, and exercising a part of its sovereignty, the same rule applies as to claims under tax executions issued by them as under those issued by the state.

April 8, 1884.

Tax. Municipal Corporations. Laws. Claim. Before Judge Fort. Sumter County. At Chambers. February 29, 1884.

Peggy Harris filed her petition to compel A. P. Lingo, the city marshal of Americus, to accept and return to the superior court a claim which she had tendered to him to a lot levied on as the property of Ben. Harris for a license tax due by him. One ground urged by the defendant against the grant of a *mandamus* was that the claim tendered was *in forma pauperis*, and that such a claim to such a tax *fi. fa.* was not lawful. The court granted the *mandamus*, and defendant excepted.

Hawkins & Hawkins, for plaintiff in error.

B. B. HINTON, for defendant.

BLANDFORD, Justice.

The question which arises from the record in this case is, whether property levied on by a tax execution, issued by a municipal corporation, can be claimed by and under an affidavit *in forma pauperis*, or provided in the act of 1870, p. 411, Code, §3733, or not.

Prior to the judiciary act of 16th February, 1799, no claim could be interposed to property levied on by executions issued upon judgments at law, but the same was sold, leaving the parties interested to their actions for redress; but by virtue of that act, and subsequent acts amendatory thereof, as will be found embraced in §§3725 to 3733 of the Code, it was provided that, where property was levied on, which was claimed by a person not a party to such execution, he might claim the same by making the affidavit and giving bond, with security payable to the plaintiff, conditioned to pay all damages which the jury, on the trial of the right of property, might assess against the claimant No one ever supposed, under the claim laws referred to, that the same extended to property levied on by tax executions. In the act of 1810, which was amended by the act of 1840, which acts are embraced in §896 of the Code, it is provided that where property is levied on by tax executions, claims are allowed by the claimant's giving bond and security for the eventual condemnation money, and if found subject, such claimant and his sureties shall be in all respects liable, as on appeal bond.

So it can be seen what was the legislation and policy of the state up to the passage of the act of 1870. The claims to property levied on by executions issued upon judgments at law imposed a different liability on claimants and their sureties than the liability of claimants, and their sureties, to property levied on by tax executions. In the former case, the claimant and his sureties were only liable

for such damages as the jury might assess against them; while in the latter, the claimant and his sureties were liable for the condemnation money, if the property was found subject, and judgment for the full amount of the tax might be entered *instanter* against the claimant and his sureties. These two classes of claimants are separate and distinct, with separate and distinct liabilities. The act of 1870 declares "that in all cases where claimants are unable to give bond and security, as now required by law in claim cases, it shall and may be the privilege of such claimant to file, in addition to the oath now required, an affidavit," etc., which affidavit is the pauper affidavit.

Can it be that the legislature intended, by the use of the words "claim cases," to include cases of claims under levies by tax executions? It is not probable. It has been shown that there is a wide distinction between the liability of claimants and their sureties in cases of claims to property levied on by executions issued on judgments at law and claims to property levied on by tax execution. It is to be presumed that the legislature was cognizant of this difference when it enacted the law of 1870. It would be somewhat rash to presume that the legislature intended, by the use of the words "claim cases," to include claim cases which arose from levies of tax executions. Especially would this be so, when the consequence of such a construction might lead to the embarrassment of the state's operations, the postponement of the collection of taxes, and the evil consequence growing out of the same.

It is a general rule that the state is not bound by the passage of a law, unless named therein, or the words of the act should be so plain, clear and unmistakable as to leave no doubt as to the intention of the legislature. Where there is doubt, it will be resolved in favor of the public. 20 Wallace, 251; 92 U. S., 618. This rule of construction comes down to us from our English ancestors, and we recognize it as sound, and the policy which originally dictated

it lives and is in force to-day, and is rendered manifest from the act of 1870.

But it is insisted that the execution in the present case was issued by a municipal corporation, and is not to be considered as an execution issued by a state officer. This position is equally untenable. Municipal corporations, counties, towns, etc. are political divisions of the state, and they exercise a part of the sovereignty of the state for the good of the people.

So we think that a claim cannot be interposed *in forma pauperis* to property levied on by a tax execution issued by a municipal corporation, but the same must be interposed as provided in §896 of the Code. And if we are right in these views, it follows that the order granting the *mandamus*, directing the city marshal to receive the claim *in forma pauperis*, by the court below, must be reversed.

Judgment reversed.