GEORGIA PUBLIC-SERVICE COMMISSION *v.* CITY OF ALBANY *et al.*

No. 10397. FEBRUARY 16, 1935.

*M. J. Yeomans, attorney-general, J. J. E. Anderson, B. D. Murphy,* and *J. T. Goree, assistant attorneys-general,* for plaintiffs in error.

*S. B. Lippitt, A. H. Freeman, J. O. Futral, Blair & Gardner, A. C. Garden, Jeff A. Pope, J. T. Thomasson, Duke Davis, Standish Thompson, W. D. Tutt, J. D. Gardner, Hoyt H. Whelchel, C. C. King, Finley & Henson, W. J. Crowe, W. M. Dallas,* and *W. Howell Morrow,* contra.

RUSSELL, Chief Justice. This was a case in which the Georgia Public-Service Commission notified the City of Albany, along with other municipalities operating electric-light systems, as well as all private corporations operating similar utilities, to appear and answer why their rates should not be reduced. Upon receiving the order of the Public-Service Commission to show cause, etc., the City of Albany filed a petition contending that the Public Service Commission had no jurisdiction, so far as related to the City of Albany in the operation of its water and electric-light system, and praying for an injunction restraining the Public-Service Commission from proceeding to enforce any of the rules provided by law by which the Public-Service Commission is enabled to enforce its judgments. The superior court of Fulton County granted a temporary restraining order, and issued a rule nisi calling upon the Public-Service Commission to show cause why an interlocutory injunction should not be granted. On interlocutory hearing the court granted an injunction as prayed. The exception is to this judgment. It is admitted that in its final analysis the question involved in the case at bar is reduced to one point. Is the juris-

diction of the Public-Service Commission in the control of rates and regulations of the business of furnishing water and electricity for the public use so comprehensive and exclusive as to include municipal plants which have been authorized by the General Assembly to perform this public service as a governmental instrumentality? Included within this question, there is naturally presented the inquiry whether the legislative delegation of authority in this respect to certain municipalities is violative of the constitutional provision (art. 2, sec. 4, par. 1) which forbids the enactment of a special law at variance or in conflict with a general law upon the same subject. At the outset it must be borne in mind that the powers granted to the Public-Service Commission are all merely statutory. Art. 4, sec. 2, par. 1, of the constitution of 1877, which led to the enactment of the act approved October 14, 1879 (Ga. L. 1879, p. 125), and the creation of the original Railroad Commission of Georgia, has no reference to rate fixing or regulations other than as applicable to railroads. The scope of the duties of the present Public-Service Commission have been so enlarged as to include public-utility corporations, merely by acts of the General Assembly. Of these we deem it necessary only to refer specifically to the act approved August 23, 1907 (Ga. L. 1907, p. 72), and the act approved August 21, 1922 (Ga. L. 1922, p. 143), in which the name was changed from the Railroad Commission of Georgia to the Georgia Public-Service Commission.

We are of the opinion that a proper determination of the question now before this court is of the highest importance, and involves the perpetuation of some of the most precious principles which underlie American democratic institutions. The principle of local self-government is one of the mudsills of democratic and republican institutions. In the creation of a municipality the State delegates to the municipality such powers of local government as the sovereign sees fit to grant. There is no limit except the discretion of the General Assembly subject to constitutional limitations. If the regulation of private-utility corporations, whose primary purpose is profit, is necessary, as it is for the protection of their customers, it would seem to be unnecessary to provide similar supervision or protection to the citizens of a municipality, who themselves own the plant which supplies the electricity and water. The remedy of any ill that can be anticipated rests with the owners of

the plant, the qualified voters of the municipality, at the ballot-box. But it is contended by able counsel for the Public-Service Commission, "first, that, irrespective of the express provisions of any municipal charter, the Public-Service Commission has jurisdiction, under the act of 1907 as amended, to regulate the rates to be charged by municipalities expressly authorized by their charters to operate and maintain electric-power plants; second, that even if it should be held that any jurisdiction of the Public-Service Commission is ousted by the express provision of a city charter authorizing the municipality to regulate rates, the Commission still has such power and authority with reference to any municipality expressly authorized to operate and maintain electric-power plants, but not expressly authorized to regulate rates within the municipality; third, that those municipalities which have no express charter authority either to operate an electric-power plant or to fix the rates to be charged within the municipality necessarily fall within the jurisdiction of the Public-Service Commission; and fourth, that with reference to all municipalities, whether having express charter powers or not, the Public-Service Commission has jurisdiction to regulate the rates to be charged customers living beyond the corporate boundaries of the municipality." For reasons hereafter to be stated, the ruling of this court in *Atlanta Terminal Co.* v. *Georgia Public Service Com.*, 163 *Ga.* 897 (6) (137 S. E. 556), even if decisive of the General Assembly's inherent power to regulate public utilities, is without application in this case, as we are of the opinion that a municipal corporation does not become in any sense a public utility, though it be empowered to operate and does operate an electric-light and water plant. Hence it does not follow, as contended by learned counsel, that "the General Assembly thus has the power to regulate the rates to be charged by municipalities which operate public utilities," and in our opinion neither the provisions of art. 4, sec. 2, paragraph 1, nor art. 3, sec. 7, par. 22, of the constitution, nor the rulings in *Georgia Railway & Power Co.* v. *Georgia Railroad Com.*, 149 *Ga.* 1, 5, 11 (98 S. E. 696, 5 A. L. R. 1), *Union Dry Goods Co.* v. *Georgia Public-Service Com.*, 142 *Ga.* 841 (2), 845 (82 S. E. 946, L. R. A. 1916E, 358), and *Manigault v.* Springs, 199 U. S. 473, 480 (26 Sup. Ct. 127, 50 L. ed. 274), support this contention. We can not concur in the statement of counsel for the Public-Service Commission that "it

may be taken as definitely settled that the power of the General Assembly to regulate the rates to be charged by utilities extends over and applies to utilities which are operated by municipal corporations." It is a contention of counsel that "the legislature has vested exclusive jurisdiction to determine just and reasonable rates in the Georgia Public Service Commission." To support this proposition, it is stated that by the act of 1879, supra, the General Assembly created the Railroad Commission of Georgia and vested in it jurisdiction and authority to determine reasonable freight and passenger rates; that this was amended by the act of 1907, supra, so as to enlarge the jurisdiction of the commission and extend it to "gas and electric-light and power companies, corporations, or persons owning, leasing, or operating public gas plants or electric-light and power plants furnishing service to the public." Another argument on this point is based upon the premise "that the power to regulate municipal rates is inherent in the General Assembly, and that this power is not defeated by any grant of power to the municipal corporation."

This brings us back to the question whether or not the General Assembly has exercised an inherent power by which a municipal corporation can not exercise the powers conferred upon it by the General Assembly. The plaintiff in error, in support of this proposition, cites 76 A. L. R. as follows: "A city in the operation of an electric utility, selling service to the public, acts in its private business capacity, regardless of whether its power to so act is inherent, implied, or is granted by statute. . . When a municipal corporation engages in an activity of a business, rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad, which is generally engaged in by individuals or private corporations, it acts as such corporation, and not in its sovereign capacity." As authority for that statement, counsel cite City of Logansport v. Public-Service Commission, 202 Ind. 523 (177 N. E. 249, 76 A. L. R. 838); American Aniline Products v. Lockhaven, 288 Pa. 420 (135 Atl. 726, 50 A. L. R. 121); New York &c. Power Co. v. New York, 221 App. Div. 544 (224 N. Y. Supp. 564.) These authorities, though they might be persuasive, are not in accordance with any ruling in this State with which we are familiar, and appear to conflict with principles to which we shall shortly refer. The use of the word "corporation"

in the Civil Code of 1910, § 2662, in our opinion, does not refer to municipal corporations which own, lease, or operate electric-light and power plants. Its plain meaning, when considered with its context, shows that it refers to what are ordinarily known as private corporations. Section 2190 defines a public corporation as "one having for its object the administration of a portion of the powers of government, delegated to it for that purpose—such are municipal corporations." In the immediately succeeding section, 2191, it is declared that "all others are private, whether the object of incorporation be for public convenience or individual profit, and whether the purpose be, in its nature, civil, religious, or educational." It can not be inferred from this, as contended by counsel, that a municipal corporation which, in aid and protection of its citizens, engaged in a public service tending to protect the citizens of the municipality from exorbitant charges for electric service, would become a private corporation. It is contended by counsel that the law upon this subject is so plain as to be unambiguous, and therefore, under the doctrine announced in *Neal* v. *Moultrie,* 12 *Ga.* 104, 110, *Georgia Casually Co.* v. *Jones,* 156 *Ga.* 654, 666 (119 S. E. 721), and L. & N. Railroad Co. *v.* United States, 282 U. S. 740 (51 Sup. Ct. 297), requires no construction. In this contention we can not concur. However, we agree with the contention of counsel that "if the act of 1907 properly construed conferred upon the Public-Service Commission the power and authority to regulate municipal rates, then it supersedes all authority theretofore granted in municipal charters, and all municipal charters subsequently granted and containing such authority are necessarily unconstitutional" because they are in violation of art. 1, sec. 4, par. 1, of the constitution of 1877. Therefore we shall now consider whether the act of 1907 conferred exclusive jurisdiction upon the Railroad Commission (now the Public-Service Commission) to regulate municipal rates, where the General Assembly has delegated to the municipal government within its local jurisdiction the power of regulation and control.

After a very careful and painstaking examination of the entire record in this case, as well as the briefs of counsel, we have reached the conclusion that in this case the chancellor did not err in granting an injunction as prayed by the City of Albany and the intervening municipalities. In his judgment it is said: "In my opin-

ion the act of 1907, construed in connection with the amendment of 1922, is not so plain, clear, and unmistakable as to leave no doubt that it was the intention of the legislature to vest exclusive power in the Public-Service Commission to determine what are just and reasonable rates in the various municipalities of the State who have been granted the right and authority by legislative enactment. This interpretation of the act and its amendment has been acquiesced in by the Georgia Public-Service Commission and its predecessors since the year 1907. The legislature has, on numerous occasions, placed this interpretation on the law by granting to municipalities, either by charter amendments or by charters, the right to determine what are just and reasonable rates in the various municipalities." For the mere purpose of decision we might content ourselves with this extract from the opinion of the lower court, were we not impressed by the thought that perhaps it is the duty of the Supreme Court, the highest judicatory in the State, to deal seriatim with the different questions which have been presented by the record and by the argument of counsel. It is to be specially noted in this case that at the same session of the General Assembly at which was passed the act of 1907, enlarging the Railroad Commission and dealing with its jurisdiction, the legislature conferred upon the City of Albany the right to supply water and electricity to the inhabitants of that municipality, and to fix the rate at which these services should be supplied. Ga. L. 1907, pp. 369-395, sec. 13. This act was approved August 22, 1907, the day preceding the approval of the act concerning the Railroad Commission to which we have referred. This act (pertaining to the Railroad Commission) was known as the Candler-Overstreet bill. Hon. C. M. Candler, who was a coauthor of the bill, may be presumed to have been most familiar with the intention of the General Assembly in the passage of the act. In 1909 he became chairman of the Railroad Commission and for many years occupied that position. At this same session (1907) of the General Assembly there was conferred upon the municipalities of Camilla, Fitzgerald, and Fort Valley the authority to operate electric plants and regulate the charges to be made for such service. Ga. L. 1907, pp. 512 et seq., 630 et seq., and 661 et seq. The question now before us was raised and submitted to Hon. James K. Hines, as special attorney for the Railroad Commission, and the

opinion of Judge Hines, as contained in Reports 36 and 37 of the Railroad Commission, p. 115 et seq., was as follows:

"Atlanta, Ga. February 10th, 1910.

"Railroad Commission of Georgia—Gentlemen:

"Your letter of the 18th ult., enclosing letter from the secretary and treasurer of the Adel Electric Light & Power Company, came duly to hand; and I note that you wish my opinion upon the question: Is a municipal public gas or electric-light plant subject to the jurisdiction of the Railroad Commission of Georgia? This involves the proper construction of the Candler-Overstreet Act, approved August 22nd, 1907. In the caption of this act it is declared, among other things, to be an act to so enlarge the powers of the Railroad Commission of Georgia as to 'extend its powers and jurisdiction over . . gas, electric-light, and power companies, or corporations or persons owning, leasing, or operating public gas plants, electric-light and power plants furnishing power to the public.' By section 5 of this act it is provided that 'The powers and duties heretofore conferred by law upon the Railroad Commission are hereby extended and enlarged, so that its authority and control shall extend over . . gas and electric and power companies, corporations, or persons owning, leasing, or operating public gas plants, or electric-light and power plants furnishing service to the public.' By section 6 of this act, it is further provided that 'The Railroad Commission of Georgia shall have and exercise all the power and authority heretofore conferred upon it by law, and shall have a general supervision of all . . gas or electric-light and power companies within this State.'

"These provisions of the act are broad enough to cover all gas or electric-light or power companies within this State, whether they be private or public corporations. So if you look to the mere letter of the statute, we might reach the conclusion that gas and electric plants owned by municipal corporations in this State are subject to the jurisdiction and supervision of the Commission. This view would be fortified by the further consideration that at common law public corporations are subject to governmental visitation and control. 10 Cyc. 157; *Cleveland* v. *Stewart*, 3 *Ga.* 283; *Dart* v. *Houston*, 22 *Ga.* 506. This view would be further fortified by the fact that a municipal corporation, as a quasi-private corporation, exercising its powers for profits, is subject to the same measure of

liability, both in contract and tort, as private corporations. 28 Cyc. 126; *Savannah* v. *Cullens,* 38 *Ga.* 334 [95 Am. D. 398]; Fenimore v. New Orleans, 20 La. Ann. 144, Chapman v. Charleston, 28 S. C. 373 [13 Am. St. R. 681]; Philadelphia v. Collins, 68 Pa. St. 106; Suffolk v. Park, 79 Va. 660 [52 Am. R. 640]; Bailey v. New York, 3 Hill, 531 [38 Am. D. 669]. It might be further said that when a municipal corporation undertakes to operate its public utilities, such as water, gas, electric and power plants, it should be subject to the same control and supervision as private corporations, which perform these functions. There is force in this view.

"But under our law the State is not bound by the passage of a law, unless named therein, or unless the words of the act may be so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature. Political Code, § 3; *Lingo* v. *Harris,* 73 *Ga.* 30. General words of a statute will not include the government or affect its rights, unless that construction be clear and indisputable upon the text of the act. U. S. v. Howe, Federal Cases, No. 15,373 (2nd Mason, 311); U. S. v. Hewes, Fed. Cases No. 15,359 (Crabb, 307); U. S. v. Wise, Fed. Cases 16,659 (2 Wall. Jr. 72). A general law does not bind the State unless expressly mentioned therein. State v. Garland, 29 N. C. 48; State v. Board of Public Works, 36 Ohio St. 409; State v. Brewer, 64 Ala. 287; State v. Milburn, 9 Gill, 105; State v. Cline, 41 N. H. 238; U. S. v. Herron, 87 U. S. (20 Wall.) 251, 21 L. ed. 275. The same rule applies in large measure to public corporations, such as counties, towns, school districts, and municipalities. 2 Lewis' Sutherland's Statutory Construction, § 514, p. 953; Stermer v. LaPlata Co., 5 Colo. App. 379 [38 Pac. 839]. Kein v. School Dist., 42 Mo. App. 460; Seton v. Hoyt, 34 Ore. 266 [55 Pac. 967, 75 Am. St. R. 641]; Trustees of Common School Dist. v. Flemingsburg, 97 Ky. 702 [31 S. W. 722]. This application of the rule to municipalities seems to have been endorsed by the Supreme Court of this State. 91 *Ga.* 522; 102 *Ga.* 274; *Butler* v. *Merritt,* 113 *Ga.* 238 [38 S. E. 751]. In the last-mentioned case, the Supreme Court says: 'It is to be presumed primarily that the General Assembly intended to legislate with reference to individuals,' and we may add in all legislations concerning corporations to private corporations. . . So the Supreme Court held, in the last-mentioned

case, that the general local option liquor law did not prohibit the sale of liquor by municipal dispensaries. In other words, that the statute which made it unlawful 'for any person within the limits of such county to sell or barter . . any alcoholic, spirituous, malt, or intoxicating liquor,' after such law had been adopted by the voters of the county, did not apply to a municipal corporation of such county operating a dispensary.

"When the construction of such a statute is in doubt, the doubt will be resolved in favor of the public, and against the construction that the legislature intended to embrace the State or the political subdivisions thereof. 20 Wall. 251; 92 U. S. 618; *Lingo v. Harris,* 73 *Ga.* 30. Municipal corporations are not expressly mentioned in the act of August 22nd, 1907, which enlarges the jurisdiction of the commission, and gives it jurisdiction over public gas, electric-light, and power companies or corporations. It is not clear and indisputable that the intention of the legislature was to include the public plants and municipal corporations. The construction of this act which would reach that conclusion is a doubtful construction, and should be resolved in favor of the public. So I reach the conclusion that the act of August 22nd, 1907, does not give the commission jurisdiction or supervision over gas, electric-light, and power plants which are owned and operated by municipalities in this State. This view is fortified by other provisions of this act, such as the one which gives the commission jurisdiction over the issuing of stocks and bonds by companies subject to its jurisdiction. If the commission has jurisdiction over these public plants, then it would have jurisdiction over the issuing of bonds by municipalities in this State, floated for the purpose of erecting and operating these public plants. It does not clearly appear from this act that such was the intention of the General Assembly in enacting this legislation.

"There are other provisions in this act, which I need not mention, which confirm the interpretation which I put upon it; and which indicate that the legislature did not intend to give the commission jurisdiction over these plants of the towns and cities of the State.

"Yours truly, James K. Hines, Attorney for Railroad Commission."

This opinion was adopted and acted upon by the Railroad Com-

mission and its successor, the Public-Service Commission, from the time of its deliverance until the time of the issuance of the rule nisi by the Public-Service Commission in this case. The rule as to the binding effect of the view of an administrative body as to its duties, jurisdiction, or powers has been variously stated. Some authorities contend that the ruling of an administrative body as to its own duties and jurisdiction, followed for a long number of years, is binding upon the courts in their construction of legislation, and others that it is merely entitled to the highest respect. Even if the rule that the view of an administrative body is ordinarily only entitled to the highest respect is followed, we are of the opinion that this opinion, buttressed as it is by the unchallenged sanction of a mind of such judicial acumen and infallible clarity as that which distinguished Judge Hines (later a most distinguished member of this court), is well-nigh conclusive on the principle in issue. However, the controlling question is whether the terms of the act of 1907, at the time of its passage, can be more reasonably construed as conferring exclusive jurisdiction to regulate electric rates upon the Railroad Commission (now the Public-Service Commission) throughout the entire State, and without regard to municipalities, than that the intent of the legislature was only to confer upon the Railroad Commission (now the Public-Service Commission) supervision of the regulation and rate fixing of private corporations engaged in the public service merely for personal profit. The General Assembly was well aware of its power of classification, and it must be assumed, from the fact that the same session of the General Assembly not only passed the general act of 1907 but also several special acts giving to municipalities the right to deal with the question within the local boundaries of these municipalities, that it was the intention of the legislature to designate, by the word "companies," referred to in section 6 of the general act of 1907, two classes of corporations, the one embracing all corporations engaged only for profit in the public service and therefore private corporations, and the other municipal corporations, to which at the same session of the General Assembly were delegated the power of prescribing regulations and fixing rates within the jurisdictional limits of the municipality. But if it be not plain that this was the intention of the General Assembly, and on the contrary there is doubt as to the legislative intention, never-

theless, by well-recognized rules of construction, the doubt will be resolved in favor of the public. *Lingo* v. *Harris, 73 Ga.* 28 (2).

No constitutional question is involved in this case, for the powers of the Public-Service Commission are altogether statutory; and it was within the power of the General Assembly, in the passage of all of the legislative grants conferred upon the City of Albany and the several intervenors in this case, to delegate to these subdivisions of the State the authority which has been conferred upon each. The act of 1907 did not expressly or by necessary implication confer upon the Georgia Public-Service Commission regulatory power over municipal corporations with respect to supervision and control over electric rates. So that it can not be said as a matter of law that the specific charter authority granted theretofore by the General Assembly of Georgia prior to said act was expressly or by necessary implication repealed, and specific charter authority thereafter granted by the General Assembly is unconstitutional and void by reason of being a special law in conflict with a general law covering the same subject. Nothing in the act of 1907 refers to municipalities or the charter authority of municipalities, and nothing contained in the act is in conflict with, but is rather sustained by, the express charter hereto expressly granted municipalities. In the circumstances, and especially by reason of the re-enactment of the act of 1907 by the legislature in 1922, enlarging the powers of the Railroad Commission (now the Public-Service Commission), and in view of the duty of this court to harmonize any apparent conflict in legislation if possible, it must be held that the failure of the General Assembly to expressly refer to the municipalities to which had been granted the power to supervise and fix the rates of charges for electricity makes applicable the maxim that *expressio unius exclusio est alterius*—that the inclusion of the one is the exclusion of the other; and hence the use of the word "corporations" in section 6 of the act of 1922, supra, can only refer to corporations other than municipal corporations, or, in other words, corporations engaged in furnishing electricity for private profit. In the case of all the defendants in error, whether the power to regulate and fix the charges for electric current was conferred prior to the act of 1922 or subsequent thereto, each legislative enactment was a recognition and a sanction, on the part of the sovereign legislative power of the State, of the construction which confined the

use of the word "corporations" to public-utility corporations as we have defined them, and excluded municipal corporations, although they might produce a profit by their operation. Whatever may be held in other jurisdictions, this series of legislative enactments by the General Assembly of Georgia was a declaration that in the exercise of its governmental functions a Georgia municipality may carry on a business which is ordinarily private, in which there is a public interest, for the protection of its citizens against extortionate charges or to promote their welfare.

As has been stated, at the 1907 session of the General Assembly of Georgia at which the act to enlarge the powers of the Railroad Commission was passed, specific charter authority was given to four Georgia municipalities, to wit, Albany, Camilla, Fitzgerald, and Fort Valley, to operate electric plants, make rules and regulations governing the furnishing of electric current, and establish prices to be charged for the service. True, section 5 of the act of 1907 does include the language that "the power to determine what are just and reasonable rates and charges is vested exclusively in said commission." But under the ruling of this court in *Estes* v. *Perry,* 167 *Ga.* 902 (147 S. E. 370), this merely means jurisdiction of the corporations over which jurisdiction has been given to the commission. As held in that case: "The Georgia Public-Service Commission, succeeding, in virtue of the act of 1922 (Ga. L. 1922, p. 143), to the powers and authority of the Railroad Commission of Georgia, has not jurisdiction, under the provisions of sections 5 and 6 of the act of 1907 (Ga. L. 1907, p. 72), to regulate and control the business of common carriers other than classes of common-carrier corporations specifically mentioned in those sections; and the powers so conferred do not extend to regulation of persons operating motor-buses on the highways of the State." It was said in the opinion: "The subsequent part of section 6 contains provisions that would be appropriate to railroads, but not to all common carriers. The subsequent sections of the act contain provisions that would be appropriate to the various 'corporations and companies' specially mentioned in the act, but not to all common carriers. In the light of the history of the legislation and considered in its context, the words 'common carriers' should be construed to refer to railroad companies and other common-carrier companies expressly mentioned in the act, and not to include *com-*

*mon* carriers generally. The act specifically mentioned 'wharves and docks,' but did not mention steamboats, vessels, or navigation companies, nor did it mention ferries and many other classes of common carriers to which the subsequent provisions of the act would be appropriate. The entire legislation deals with administrative matters regulatory of specific businesses, and does not indicate a policy to lay hold of other businesses under a blanket designation." Section 6 of the general act of 1907, page 75, defining the jurisdiction of the commission, is limited to electric-light and power companies and other public-service companies. No reference is made to municipalities or political subdivisions of the State. A municipal corporation is never known as a public-service company. The power to be kept informed as to the condition of said "companies and corporations," their capitalization, etc., is inconsistent with the authority of a statutory administrative body over a subordinate branch of the government. This section (6) of the act of 1907 (p. 76) specifically designates "other corporations over which it has jurisdiction hereunder," and section 8 states "that each of the companies or corporations over which the authority of the Railroad Commission is extended by law shall be required to furnish said commission a list of any stocks and bonds," etc. It can not be inferred that this refers to municipal corporations, which ordinarily would not have any stocks or bonds to be listed. Section 6 of the act of 1922 provides that there shall be paid, by all public-service corporations or utilities subject to the jurisdiction of the commission, a special fee in addition to those now required by law. It is provided in the act that upon failure to make payment of this fee the same shall be collected by the comptroller-general in the same manner as franchise taxes are now collected. This shows that it was not the intention of the legislature that the provisions of the act of 1922 should apply to municipal corporations, because municipal corporations, being subdivisions of government, are not subject to taxation.

Certainly it is well-settled legal doctrine that repeals by implication are not favored; and yet to hold that the act of 1907 included municipalities by implication would, by implication, repeal all express charters heretofore given. As said in *Atlantic Log & Export Co.* v. *Central Railway Co.* 171 *Ga.* 175 (155 S. E. 525): "In *McGregor* v. *Clark,* 155 *Ga.* 377 [116 S. E. 823], this court

said: 'A repeal by implication takes place only in so far as a statute is clearly repugnant to a former statute, and is so irreconcilably inconsistent with it that the two can not stand together, or is manifestly intended to cover the subject-matter of the former and operate as a substitute for it, that such a repeal will be held to result. This rule is stated in various forms in the following cases.' " See also on this subject the masterful discussion in behalf of this court by Justice Holden, on the question of repeal by implication, in *Gray* v. *McLendon,* 134 *Ga.* 224 (67 S. E. 859), recently cited by this court in *Felton* v. *Huiet,* 178 *Ga.* 311 (173 S. E. 660). After the passage of the amendment of 1922, heretofore referred to, the General Assembly, by specific charter authority (Ga. L. 1923, pp. 370, 401-2-3-14) gave to the City of Albany express and practically unlimited authority to own, use, and operate for municipal purposes and for profit its system of waterworks, electric lights and gas, the power to establish a scale of water, gas, and electric rates, and full authority to regulate the use of water, gas, and electricity in such manner as should seem necessary and proper. It seems to us to be the statement of a public policy, which inures to the benefit of all the intervenors in the case at bar. We are of the opinion, from a comparison of all the legislation affecting this case to which we have referred, that it was the legislative intention that the public-service corporations should be supervised, and the public should have a voice, through legislative instrumentality, in fixing their rates. Private corporations, or quasi-public corporations, are properly supervised and controlled by the Public-Service Commission. Any municipal corporation owning its own properties and serving its own people is controlled by the electorate. These utilities belong to the people, the taxpayers. The taxpayers elect their own commissioners, and the commissioners elect a board of water, light, and gas commissioners, and they fix the rates. The protection is furnished in one instance by the Public-Service Commission, and in the second instance by the people themselves through their elected officers. They serve themselves, and the profits are used for governmental purposes and relief from ad valorem or other forms of taxation. As was well said by the Supreme Court of Colorado in the case of City of Lamar *v.* Wiley, 248 Pac. 1009: "It is unnecessary to give to a commission authority to regulate the rates of municipally owned

utilities, since the parties affected by the rates are the municipality and its citizens, and the latter, whose chosen officers fix the rates, if dissatisfied with the charges they prescribe, may easily effect a change either at a regular election or by a recall. . . Where the people are dealing with a privately owned public utility, the situation is quite different, and there is good reason for a commission which shall act in the interest of the public to avoid the possibility of oppression." The difference between the two types of corporation is apparent. As said by the Supreme Court of Colorado in Town of Holyoke v. Smith, 75 Colo. 286 (226 Pac. 158) : " 'Local self-government having always been a part of the English and American systems, we shall look for its recognition in any such instrument, and even if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view.' Cooley's Constitutional Limitations (7th ed.), p. 65. The right of self-government in cities and towns is coeval with the history of the Anglo-Saxon race. It was confirmed by Magna Charta to cities and boroughs. . . In Cooley's Constitutional Limitations (7th ed.), page 261, it is said that one of the vital ideas in the American form of government is that local affairs shall be managed by local authorities, and general affairs only by the central authorities." See also the very able opinion of Justice Holmes in Springfield Gas &c. Co. v. Springfield, 257 U. S. 66 (42 Sup. Ct. 24). There is no inconsistency in allowing the Public-Service Commission to regulate privately owned corporations furnishing electric lights and power, and leaving municipalities free to regulate the rates to be charged its citizens for services furnished by the municipality. Each is in its own sphere, and exercises separate and distinct powers, which are in no wise conflicting. A municipality is a part of the State itself, and in regulating rates is exercising it as a component unit of the State itself. The Supreme Court of the United States, in Puget Sound Power & Light Co. v. Seattle, 291 U. S. 619 (54 Sup. Ct. 542, 78 L. ed. 664), through Mr. Justice Stone, said: "It is enough for present purposes that the equal-protection clause does not forbid discrimination with respect to things that are different. The distinctions between the taxing sovereign and its taxpayers are many and obvious. The private corporation, whatever its public duties, carries on its business for private profit, and

is subject to the obligation, common to all, to contribute to the expenses of government by paying taxes. The municipality, which is enabled to function only because it is a tax gatherer, may acquire property or conduct a business in the interest of the public welfare, and its gains, if any, must be used for public ends."

The court did not err in the grant of an injunction.

*Judgment affirmed.* *All the Justices concur.*

ATKINSON, J., concurs in the judgment.